QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Alex Spiro, Esq.
Lindsay Weber, Esq.

L'ABBATE, BALKAN, COLAVITA &
CONTINI LLP
1001 Franklin Avenue
Garden City, New York 11530
Marian C. Rice, Esq.
James D. Spithogiannis, Esq.
*Co-Counsel to Robinson Brog Leinwand Greene*
*Genovese & Gluck P.C., A. Mitchell Greene, and Adam Greene*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, LLC | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

```
-------------------------------------------------------------------x
ORION HEALTHCORP, INC., et al.,

                              Plaintiffs,
                                                    Adv. Pro. No. 18-08104 (AST)
              v.

ROBINSON BROG LEINWAND GREENE GENOVESE
& GLUCK, P.C., A. MITCHELL GREENE, AND ADAM
GREENE,

                              Defendants.
-------------------------------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS COMPLAINT AND OBJECTION TO PROOFS OF CLAIM**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

    A.   The Relevant Parties ...................................................................................... 3

    B.   The Release Agreement .................................................................................. 6

    C.   The Adequate Protection Order ...................................................................... 8

    D.   The Complaint ................................................................................................ 9

ARGUMENT ......................................................................................................................... 10

I.    THE DEBTORS' CLAIMS ARE BARRED BY APPLICATION OF
    THE *WAGONER* RULE AND THE *IN PARI DELICTO* DOCTRINE ........................... 11

    A.   The Debtors Lack Standing To Pursue Their Claims ................................... 11

    B.   The Debtors' Claims Are Barred By The *In Pari Delicto* Doctrine ........................ 13

    C.   The Adverse Interest Exception Is Inapplicable .......................................... 15

II.    THE RELEASE AGREEMENT PRECLUDES THE DEBTORS
    FROM FILING SUIT ............................................................................................ 17

III.    THE DEBTORS FAIL TO ADEQUATELY STATE CLAIMS FOR
    RELIEF ................................................................................................................ 19

    A.   The Legal Malpractice Claim (Count I) Fails As A Matter Of Law ........................ 19

        1.   The Debtors Fail To Allege That Robinson Brog Performed
        Legal Services With Negligence ......................................................... 19

        2.   The Debtors Fail To Allege That Robinson Brog Was The
        Proximate Cause Of The Debtors' Losses ......................................... 21

    B.   The Debtors Fail To Plead Claims For Aiding And Abetting
    Breach Of Fiduciary Duty (Count II) ........................................................... 22

C.    The Debtors Claim For Breach Of Fiduciary (Count III) Is
Fatally Deficient ..................................................................................................... 25

D.    The Debtors Fail To Adequately Allege A Claim For Unjust
Enrichment (Count IV) ........................................................................................... 26

IV.    THE DEBTORS' CLAIM OBJECTIONS (COUNTS V-VI) ARE
SPECIOUS AND SHOULD BE DISMISSED ..................................................................... 27

CONCLUSION ....................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                                 <u>Page</u>

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.),*
    169 B.R. 832 (Bankr. S.D.N.Y. 1994) ................................................................... 29

*Abrams v. DLA Piper (US) LLP,*
    2013 U.S. Dist LEXIS 82484 (N.D. Ind. June 12, 2013) ......................................... 21

*Art Capital Group, LLC v. Neuhaus,*
    70 A.D.3d 605, 896 N.Y.S.2d 35 (1st Dep't 2010) ................................................. 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................... 10

*Baron v. Galasso,*
    83 A.D.3d 626, 921 N.Y.S.2d 100 (2d Dep't 2011) ........................................... 22, 23

*BOKF, N.A. v. Caesars Entm't Corp.,*
    162 F. Supp.3d 243 (S.D.N.Y. 2016) ..................................................................... 18

*Brasseur v. Speranza,*
    21 A.D.3d 297, 800 N.Y.S.2d 669 (1st Dep't 2005) ............................................... 23

*Breeden v. Kirkpatrick & Lockhart, LLP,*
    268 B.R. 704 (S.D.N.Y. 2001) .............................................................................. 12

*Broad-Bussel Family LP v. Bayou Group LLC (In re Bayou Hedge Funds Inv. Litig.),*
    472 F. Supp.2d 528 (S.D.N.Y. 2007) .................................................................... 24

*Bryant v. Monaghan,*
    2018 U.S. Dist. LEXIS 130146 (S.D.N.Y. Aug. 1, 2018) ....................................... 19

*Bullmore v. Ernst & Young Cayman Islands,*
    20 Misc.3d 667, 861 N.Y.S.2d 578 (Sup. Ct. N.Y. Cty. 2008) ................................. 15

*Chaikovska v. Ernst & Young, LLP,*
    78 A.D.3d 1661, 913 N.Y.S.2d 449 (4th Dep't 2010) ............................................. 14

*Cobble Creek Consulting, Inc. v. Sichenzia Ross Friedman Ference LLP,*
    110 A.D.3d 550, 973 N.Y.S.2d 595 (1st Dep't 2013) .............................................. 26

*Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*,
    284 B.R. 355 (Bankr. S.D.N.Y. 2002) ................................................................... 29

*Concord Capital Mgmt., LLC v. Bank of Am., N.A.*,
    102 A.D.3d 406, 958 N.Y.S.2d 93 (1st Dep't 2013) ............................................ 17

*CRT Invs., Ltd. v. BDO Seidman, LLP*,
    85 A.D.3d 470, 925 N.Y.S.2d 439 (1st Dep't 2011) ............................................ 24

*Delollis v. Archer*,
    2013 N.Y. Misc. LEXIS 1873 (Sup. Ct. Suffolk Cty. April 12, 2013),
    *aff'd*, 128 A.D.3d 755 (2nd Dep't 2015) .............................................................. 20

*Don Lia v. Saporito*,
    909 F. Supp.2d 149 (E.D.N.Y. 2012) .................................................................. 25

*FIA Leveraged Fund Ltd. v. Grant Thornton LLP*,
    150 A.D.3d 492, 56 N.Y.S.3d 12 (1st Dep't 2017) ............................................. 15

*Generale Bank, New York Branch v. Wassel*,
    779 F. Supp. 310 (S.D.N.Y. 1991) ...................................................................... 19

*Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co.)*,
    280 B.R. 794 (Bankr. S.D.N.Y. 2002) ................................................................ 11

*Gregor v. Rossi*,
    120 A.D.3d 447, 992 N.Y.S.2d 17 (1st Dep't 2014) ........................................... 24

*Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.)*,
    329 B.R. 411 (Bankr. S.D.N.Y. 2005) ................................................................ 13

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ............................................................................... 12

*Holtkamp v. Parklex Assocs.*,
    30 Misc.3d 1226(A), 926 N.Y.S.2d 344 (Table) (Sup. Ct. Kings Cty. 2011) ........... 14

*In re Bennett Funding Grp., Inc.*,
    336 F.3d 94 (2d Cir. 2003) ................................................................................. 11

*In re Blockbuster Inc.*,
    No. 10 Adv. Pro. 5524, 2011 WL 1042767 (Bankr. S.D.N.Y. Mar. 17, 2011) ........ 28

*In re Complete Mgmt., Inc.*,
    No. 02 CIV. 1736 NRB, 2003 WL 21750178 (S.D.N.Y. July 29, 2003) ................................ 12

*In re Food Mgmt. Grp., LLC*,
    380 B.R. 677 (Bankr. S.D.N.Y. 2008) .................................................................................. 3

*In re Hydrogen LLC*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................................................ 29

*In re ICP Strategic Credit Income Fund Ltd.*,
    568 B.R. 596 (S.D.N.Y. 2017)............................................................................................ 16

*In re Jeweled Objects LLC*,
    2012 WL 3638006, at *11 (Bankr. S.D.N.Y. 2012)………………………………….…….. 24

*In re Mediators, Inc.*,
    105 F.3d 822 (2d Cir. 1997)............................................................................................... 12

*In re MF Global Holdings Ltd. Inv. Litig.*,
    998 F. Supp.2d 157 (S.D.N.Y. 2014)................................................................................. 13

*In re PHS Grp. Inc.*,
    581 B.R. 16 (Bankr. E.D.N.Y. 2018) ............................................................................ 11, 12

*In re Universal Foundry*,
    163 B.R. 528 (E.D. Wis. 1993) .......................................................................................... 29

*Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*,
    413 B.R. 115 (Bankr. S.D.N.Y. 2008), *aff'd*, 2009 WL 2900247
    (S.D.N.Y. Sept. 9, 2009)............................................................................................. 28, 29

*Kaminsky v. Herrick, Feinstein LLP*,
    59 A.D.3d 1, 870 N.Y.S.2d 1 (1st Dep't 2008)................................................................... 21

*Kaufman v. Cohen*,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003).......................................................... 22

*Kirschner v. Grant Thornton LLP*,
    2009 WL 1286326, 2009 U.S. Dist. LEXIS 32581 (S.D.N.Y. Apr. 14, 2009)....................... 12

*Kirschner v. KPMG LLP*,
    15 N.Y.3d 446, 938 N.E.2d 941, 912 N.Y.S.2d 508 (2010).................................................. 13

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ................................................................................. 3

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014) ................................................................................ 23

*Kyrs v. Surgue (In re Refco Inc. Sec. Litig.)*,
  No. 07 MDL 1902 (JSR), 2012 U.S. Dist. LEXIS 19915 (S.D.N.Y. Feb. 10, 2012) .............. 22

*LNC Invs. v. First Fid. Bank, N.A.*,
  173 F.3d 454 (2d Cir. 1999) ................................................................................ 26

*Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*,
  558 F.2d 1113 (2d Cir. 1977) .............................................................................. 18

*Matter of Mediators, Inc.*,
  190 B.R. 515 (S.D.N.Y. 1995) ............................................................................. 12

*McConnell v. Commonwealth Pictures Corp.*,
  7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960) ......................................... 14

*Metro. Plaza WP, LLC v. Goetz Fitzpatrick, LLP*,
  No. 11519/2009, 2013 WL 5574533 (Sup. Ct. N.Y. Cty. Sept. 30, 2013) ..................... 14

*O'Connell v. Arthur Anderson LLP (In re Alphastar Ins. Grp. Ltd.)*,
  383 B.R. 231 (Bankr. S.D.N.Y. 2008) ................................................................... 11

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings)*,
  420 B.R. 112 (Bankr. S.D.N.Y. 2009) ................................................................... 29

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*,
  322 F.3d 147 (2d Cir. 2003) ................................................................................ 14

*Official Comm. of Unsecured Creditors of Verestar Inc. v. American Tower Corp. (In re Verestar, Inc.)*,
  343 B.R. 444 (Bankr. S.D.N.Y. 2006) ................................................................... 13

*Pearl v. 305 E. 92nd St. Corp.*,
  156 A.D.2d 122, 548 N.Y.S.2d 25 (1st Dep't 1989) ................................................. 24

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*,
  721 F.3d 54 (2d Cir. 2013) .................................................................................. 14

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ................................................................. 15

*Pinter v. Dahl*,
    486 U.S. 622 (1988).............................................................................................14

*Rath v. Pitcher*,
    No. 12-CV-6543L, 2014 U.S. Dist. LEXIS 42404 (W.D.N.Y. Mar. 28, 2014) ...................... 27

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .......................................................................... 10

*Roni LLC v. Arfa*,
    72 A.D.3d 413, 897 N.Y.S.2d 421 (1st Dep't 2010), *aff'd*, 15 N.Y.3d 826,
    935 N.E.2d 791, 909 N.Y.S.2d 1 (2010)................................................................ 24

*Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*,
    8 N.Y.3d 438, 867 N.E.2d 385, 835 N.Y.S.2d 534 (2007) ...................................... 19

*Shearson Lehman Hutton, Inc. v. Wagoner ("Wagoner")*,
    944 F.2d 114 (2d Cir. 1991) ....................................................................... 11, 12

*Sheppard v. Manhattan Club Timeshare Ass'n*,
    2012 U.S. Dist. LEXIS 72902 (S.D.N.Y. May 23, 2012) ......................................... 22

*Shklovskiy v. Khan*,
    273 A.D.2d 371, 709 N.Y.S.2d 208 (2d Dep't 2000) .............................................. 17

*Skylon Corp. v. Guilford Mills, Inc.*,
    864 F. Supp. 353 (S.D.N.Y. 1994) .................................................................. 18

*Sotheby's, Inc. v. Minor*,
    2009 U.S. Dist. LEXIS 99332 (S.D.N.Y. Oct. 26, 2009) ......................................... 22

*Stokoe v. Marcum & Kliegman LLP*,
    135 A.D.3d 645, 24 N.Y.S.3d 267 (1st Dep't 2016)............................................... 15

*Symbol Techs., Inc. v. Deloitte & Touche, LLP*,
    69 A.D.3d 191, 888 N.Y.S.2d 538 (2d Dep't 2009) .............................................. 16

*Talon Air Servs. LLC v. CMA Design Studio, P.C.*,
    86 A.D.3d 511, 927 N.Y.S.2d 643 (1st Dep't 2011).............................................. 21

*The Diversified Group, Inc. v. Daugerdas*,
    139 F. Supp.2d 445 (S.D.N.Y. 2001) ........................................................................ 27

*Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP*,
    629 F. Supp.2d 259 (S.D.N.Y. 2007) .................................................................. 25, 26

*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*,
    56 A.D.3d 1, 865 N.Y.S.2d 14 (1st Dep't 2008) ...................................................... 24

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*,
    10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dep't 2004) ................................................. 27

<u>Statutes</u>

Section 105(a) of the Bankruptcy Code ................................................................. 1
Section 510(c) of the Bankruptcy Code ................................................................ 28

<u>Rules</u>

Fed. R. Bankr. P. 7008 ............................................................................... 1
Fed. R. Bankr. P. 7009 ............................................................................... 1
Fed. R. Bankr. P. 7012 ............................................................................... 1
Fed. R. Civ. P. 8(a) ................................................................................. 1
Fed. R. Civ. P. 9(b) ........................................................................... passim
Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 10

Defendants Robinson Brog Leinwand Greene Genovese & Gluck P.C., A. Mitchell Greene, and Adam Greene (collectively, "Robinson Brog") respectfully submit this memorandum of law in support of their motion (the "Motion"), pursuant to section 105(a) of the Bankruptcy Code and Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, for an order dismissing with prejudice the Complaint and Objection to Proofs of Claim [Dkt. 1] (the "Complaint") filed by plaintiffs (collectively, the "Debtors") in the above-captioned action.[1]

## PRELIMINARY STATEMENT

This adversary proceeding is a baseless attempt by the Debtors to shift responsibility for their own alleged fraud to their former attorneys, Robinson Brog. The Debtors place primary blame for their "demise" on their own Former Management (as stated in this action and in numerous parallel proceedings). The alleged wrongdoing includes management "falsifying and fabricating" bank records, "generating fake income streams and phony customers" to present a positive picture of the Debtors' financial health, and making "material misrepresentations and omissions" to unnamed investors and other third parties. The Debtors now seek to redirect liability for their own wrongdoing to Robinson Brog who, according to the Debtors, caused the Debtors more than $50 million in purported losses (in exchange for nothing more than payment of a portion of its ordinary course legal fees). The Debtors' claims against Robinson Brog are not only factually implausible, they are legally deficient, and should be dismissed for multiple reasons.

---

[1] Terms not immediately defined herein shall have the meanings ascribed to them below. Documents cited below are attached as exhibits to the accompanying Declaration of Marian Rice (the "Rice Decl.").

As an initial matter, the claims against Robinson Brog for legal malpractice (Count I), aiding and abetting breach of fiduciary duty (Count II), breach of fiduciary duty (Count III), and unjust enrichment (Count IV) are barred by the Second Circuit's *Wagoner* rule, which deprives a debtor-in-possession of standing to assert claims against third parties if the debtor itself participated in the alleged wrongdoing. Here, the Debtors allege that the Debtors' own directors, officers, board members and controlling shareholders were the primary wrongdoers in orchestrating the Debtors' "extensive and long-lasting" scheme. Thus, the Debtors' claims against Robinson Brog for allegedly participating in that wrongdoing are barred as a matter of law. Moreover, because the Debtors themselves are alleged to have acted fraudulently, the Debtors' claims are independently barred by application of New York's *in pari delicto* doctrine.

Counts I-IV are also barred by the release signed in connection with the Go-Private Transaction. Pursuant to the Release Agreement, the "Releasing Parties" expressly agreed to "fully, finally and irrevocably" release each of CHT's respective "attorneys" from any and all "claims, counterclaims, suits, causes of action, [and] damages" whether "known or unknown, past, present or future" that the "Releasing Parties" may have "had at any time in the past or that may arise in the future" with respect to "the Merger." The definition of "Releasing Parties" includes "Stockholders" of CHT, "any subsequent stockholder" and their "affiliates." As a prerequisite to the Merger closing, CHT Holdco signed the Release Agreement as Stockholder, releasing any and all claims related to CHT and the Merger. Since CHT (a wholly-owned subsidiary of CHT Holdco) and its affiliated Debtors are "affiliates" of CHT Holdco, the Release Agreement prevents the Debtors from bringing this suit.

Counts I-IV against Robinson Brog also fail because the Debtors do not (and cannot) allege "knowing participation" by Robinson Brog in the Debtors' alleged scheme, or that

2

Robinson Brog was the proximate cause of the Debtors' losses. Indeed, it is simply implausible, and nothing in the Debtors' allegations suggests, that Robinson Brog knew that the Debtors' Former Management was committing fraud. Merely alleging that Robinson Brog failed to uncover a fraud in the course of providing legal representation to the Debtors is insufficient to state a claim for relief for all counts asserted.

Finally, the Debtors' claim objection (Count V) is specious and unsubstantiated, and should be dismissed. Further, none of the Debtors' allegations come anywhere close to alleging that Robinson Brog (a non-insider) engaged in the kind of "egregious" misconduct required to equitably subordinate Robinson Brog's claims (Count VI).

Despite more than ten months of investigation by the Debtors' legal team and financial experts that included a review of hundreds of thousands of emails (that were previously alleged to have been stored on servers stolen by the Debtors' Former Management, but now appear to have been miraculously recovered) and at least one Rule 2004 examination of a Robinson Brog partner, the Debtors still fail to set forth the factual allegations necessary to satisfy minimum pleading requirements to assert a plausible claim. For these reasons, and for the reasons detailed below, the Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND[2]

### A.    The Relevant Parties

In April 2013, Paul Parmar and several business entities formed Constellation Healthcare, LLC ("CHLLC"),[3] a non-debtor, for the purpose of acquiring debtor Orion Healthcorp, Inc.

---

[2]     This background is drawn largely from the allegations in the Complaint, which Robinson Brog accepts as true solely for purposes of this Motion. In ruling on the Motion, the Court may consider documents "integral" to the complaint which are not incorporated by reference, but that the complaint nonetheless "relies heavily upon." *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 690 (Bankr. S.D.N.Y. 2008) (quotation omitted). The Court may also consider and take judicial notice of "the contents of relevant public disclosure documents." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

("Orion") and each of Orion's subsidiaries.[4] Compl. ¶¶ 18-22. CHLLC purchased Orion in June 2013, and Robinson Brog began representing Debtors in various litigation and transactional matters.[5] *Id.* at ¶¶ 20, 48-49. Robinson Brog also served as escrow agent in connection with various transactions involving the Debtors. *See, e.g., id.* ¶¶ 3, 56, 58.

In September 2014, CHLLC formed debtor Constellation Healthcare Technologies, Inc. ("CHT") and appointed Parmar as CHT's CEO. *Id.* ¶¶ 23-24. CHLLC created CHT to become the new owner of Orion and seek admission to trading on AIM (formally known as Alternative Investments Market), a dedicated-growth submarket of the London Stock Exchange targeted to small and medium-sized companies. *Id.* ¶¶ 23, 25. The so-called "Going-Public Transaction" was consummated on December 8, 2014 and CHT was admitted to trading on AIM.[6] *Id.* ¶ 26. At the time, CHT was the sole owner of Orion, and Orion was either the direct or indirect owner of eight other entities. *Id.*

Not long after CHT's admission to AIM, Orion began acquiring smaller businesses via newly-formed holding companies created specifically to acquire the operating entities. As

---

[3]     In the Complaint, the Debtors incorrectly identify CHLLC as "Constellation Healthcare, LLC." Compl. ¶ 20. The correct name of the entity formed to acquire Orion is "Constellation Health, LLC."

[4]     When CHLLC acquired Orion in 2013, Orion had five subsidiaries: Debtors Integrated Physician Solutions, LLC, Medical Billing Services, Inc., Rand Medical Billing, Inc., RMI Physicians Services Corp. and Western Skies Practice Management, Inc. Compl. ¶ 19.

[5]     Contrary to the allegations of paragraph 20 of the Complaint, Robinson Brog did not represent any of the Debtors prior to CHLLC's acquisition of Orion in June 2013.

[6]     CHT's "reporting accountant", Grant Thornton UK, LLP, and CHT's counsel, Squire Patton Boggs (UK), LLP and Squire Patton Boggs (US), LLP, undertook significant financial and legal due diligence (respectively) on CHT prior to CHT receiving approval to AIM. *See* AIM Admission Document, Constellation Healthcare Technologies, Inc. (December 8, 2014), p. 8. http://www.constellationhealthgroup.com/docs/admission-document.pdf. Following CHT's admission to trade on AIM, finnCap (a British investment company) continued to monitor CHT's activities to ensure compliance with the various rules and regulations applicable to companies listed on AIM. *See* A Guide to AIM (2015), https://www.londonstockexchange.com/companies-and-advisors/aim/publications/documents/a-guide-to-aim.pdf.

outside legal counsel representing CHT in transactional matters, Robinson Brog formed the majority of those holding companies, including the following debtors: Physicians Practice Plus, LLC, NorthStar First Health, LLC, Phoenix Health, LLC, VEGA Medical Professionals, LLC, MDRX Medical Billing LLC and NYNM Acquisition, LLC. *See* Ex. A. Robinson Brog also drafted corresponding operating agreements that identified Orion as the sole member of each of the above-referenced holding companies. *See* Ex. B through Ex. G.

In August 2016, a private-equity firm known as C.C. Capital Management, LLC (collectively with its affiliates, "C.C. Capital") made a formal offer to acquire all the outstanding shares of CHT (as named by the Debtors, the "Go-Private Transaction"). Compl. ¶ 34. To evaluate CHT's commercial potential in connection with the Go-Private Transaction, C.C. Capital retained a slew of top-tier attorneys and professional advisors to perform financial due diligence on the Debtors, including KPMG US, LLC ("KPMG"), McKinsey & Company ("McKinsey"), Black Duck Software, Inc. ("Black Duck"), Winston & Strawn, LLP ("Winston & Strawn"), and Richards Layton & Finger, PA ("Richards Layton"). *See* Ex. H; *see also* Ex. I.[7] The Debtors also retained Winston & Strawn as special counsel to perform legal due diligence in connection with the financing component of the Go-Private Transaction. *See* Ex. A. As part of a January 30, 2017 opinion issued to Bank of America, N.A., Winston & Strawn confirmed that it had examined, among other things, the Debtors' formation documents (e.g., certificates of formation, operating agreements, etc.) and corporate resolutions. *Id.* Robinson Brog, together with McGuireWoods LLP, Winston & Strawn, and DWF LLP represented CHT in the Go-Private Transaction. *See* Ex. J; *see also* CHT Proxy Statement Regarding Merger, Constellation

---

[7]  Although the Subscription Agreement and Merger Agreement are not cited in the Complaint, the Go-Private Transaction is referenced in the Complaint and plays a prominent role in the claims the Debtors have asserted.

Health    Technologies,    Inc.    (December    28,    2016),    ("CHT    Proxy    Statement"),
http://www.constellationhealthgroup.com/investor/news-docs/Proxy%20Statement.pdf, p. 14.

CHT consummated the Go-Private Transaction on January 30, 2017.  Compl. ¶ 34.
Approximately eight months later, Parmar resigned from the board of CHT in September 2017.
*Id.* ¶ 39.  Approximately one month thereafter, in October 2017 the Debtors terminated their
attorney/client relationship with Robinson Brog.  *Id.* ¶ 45.  Five months after that, on March 16,
2018, the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy
Code.  *Id.* ¶ 41.[8]

### B.    The Release Agreement

To effectuate the Go-Private Transaction, CHT executed a Merger Agreement pursuant to
which it became the wholly owned subsidiary of CHT Holdco.  *See* Ex. J, p. 1.  Per the Merger
Agreement, at least 89% of the selling shareholders who held shares of the pre-Merger publicly
traded CHT were required to execute a Voting and Support Agreement and Release of Claims
(the "Release Agreement"), *see id.* § 7.2 and Ex. A-1 thereto.  In addition, CHT Holdco signed
the Release Agreement, drafted by Winston & Strawn, as a prerequisite to the closing of the
Merger.  *See* Ex. K; *see also* Ex. L.  The Release Agreement reads, in relevant part, as follows:

> **(i)    Release of Claims.** The Stockholder on behalf of itself, and its affiliates,
> predecessors, successors, assigns, heirs, executors, legatees, administrators,
> beneficiaries, representatives and agents (the "Releasing Parties"), fully, finally
> and irrevocably releases, acquits and forever discharges to the fullest extent
> permitted by law (the "Release") the Company, Parent and each of their
> respective affiliates and each of the respective officers, directors, predecessors,
> successors and assigns of any of them and the beneficiaries, heirs, executors,
> personal or legal representatives, insurers, attorneys and other representatives of
> any of the foregoing (collectively, the "Released Parties"), from any and all
> commitments, actions, charges, complaints, promises, agreements, controversies,
> debts, claims, counterclaims, suits, causes of action, damages, demands,

---

[8]    Debtor New York Network Management, L.L.C., did not file its petition for relief under Chapter
11 of the Bankruptcy Code until July 5, 2018.  Compl. ¶ 12.

liabilities, obligations, costs and expenses of every kind and nature whatsoever, whether arising from any express, implied, oral or written contract or agreement or otherwise, known or unknown, past, present or future, at law or in equity, contingent or otherwise (collectively, a "Potential Claim"), that such Releasing Parties, or any of them, had, has or may have had at any time in the past or that may arise in the future, against the Released Parties, or any of them, for or by reason of any matter, cause or thing whatsoever occurring at any time at or prior to the Closing with respect to the Company, the shares of Common Stock, or the Merger [the "Released Matter"]. . .

**(iv)    Waiver of Unknown Claims.** With respect to any and all Potential Claims for any Released Matter, the Stockholder expressly waives and relinquishes, and the other Releasing Parties shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of any other jurisdiction or principle of common law that provides that a general release does not extend to claims that are unknown or unsuspected to the releaser at the time the releasor executes the release. The Stockholder acknowledges that the inclusion of such unknown Potential Claims herein was separately bargained for and was a key element of this Agreement. Stockholder acknowledges, and the other Releasing Parties shall be deemed to have acknowledged, that they may hereafter discover facts which are different from or in addition to those that they may now know or believe to be true with respect to any and all Potential Claims herein released and agree that all such unknown Potential Claims are nonetheless released and that this Release shall be and remain effective in all respects even if such different or additional facts are subsequently discovered.

**(v)    Covenant Not to Sue.** The Stockholder hereby irrevocably covenants to refrain from, and to cause all Releasing Parties controlled by it to refrain from, asserting any Potential Claim, or commencing, instituting or causing to be commenced, any action, proceeding, charge, complaint, or investigation of any kind against any of the Released Parties, in any forum whatsoever (including, without limitation, any administrative agency), that arises out of, relates in any way to, or is based upon, any of the Released Matters . . .

Ex. K, §§ 4(d)(i), (iv), and (v).

As can be seen from the language quoted above, the release granted by CHT Holdco extends to all affiliates and successors of CHT Holdco, and extinguished any claims those

entities could have asserted concerning any Released Matter.[9]  Accordingly, all claims held by

CHT, a wholly-owned subsidiary (and thus an affiliate) of CHT Holdco, concerning any

Released Matter, were released by the Release Agreement.  Moreover, CHT is the direct or

indirect parent of all the other Debtors.  Compl. ¶ 23.  The release therefore extends to them as

well.  Because the term "Released Matter" encompasses all claims relating to "the Company, the

Shares of Common Stock or the Merger," Release Agreement, § 4(d)(i), and because the term

"Released Parties" includes any attorneys for CHT, the Release Agreement effected a complete

release of all claims asserted in this adversary proceeding.

### C.    The Adequate Protection Order

The Debtors commenced this adversary proceeding on July 27, 2018 against Robinson

Brog.  Prior to filing this adversary proceeding, the Debtors brought a series of applications to

obtain documents, deposition testimony and other information from Robinson Brog.  Pursuant to

those applications, Robinson Brog produced thousands of documents, emails, and client files to

the Debtors.  See Rule 2004 Motion [Dkt. 21, Case No. 18-71748 (AST)] (the "Rule 2004

Motion").  In connection with the Rule 2004 Motion, the Court granted Robinson Brog priority

administrative expense claims for both its pre-petition fees and post-petition production costs and

expenses.  See May 25, 2018 Order [Dkt. 256, Case No. 18-71748 (AST)] (the "Adequate

Protection Order").  In accordance with the Adequate Protection Order, Robinson Brog filed

eight separate proofs of claim (the "Proofs of Claim") in the aggregate amount of approximately

$440,000.  Compl. ¶ 135.  On June 30, 2018, one day after filing its Proofs of Claim, Robinson

---

[9]    The term "Stockholder" is defined in the preamble of the Release Agreement to mean "the Stockholder listed on the signature page hereto (together with *any subsequent stockholder* or transferees who become a "Stockholder" pursuant to Section 3 below ...)."  *See* Ex. J, Preamble (emphasis added).  CHT Holdco not only signed the Release Agreement as Stockholder, it is also a "subsequent stockholder" of CHT, thereby placing it squarely within the definition of "Stockholder."

Brog notified Epiq, the Debtors' claims agent, that claims 10018 and 10019 had been filed in error.  Rice Decl. ¶ 4.

### D.    The Complaint

The Complaint asserts six causes of action against Robinson Brog.  Notwithstanding their different theories of recovery, the Debtors' claims all arise from the same alleged fraud.  According to the Debtors, Orion's acquisitions of Northstar, Phoenix and MDRX were "sham" transactions completed as part of "large, complex and brazen fraudulent scheme" perpetrated by Parmar and other former officers of CHT (collectively, "Former Management") designed to cause a private investment firm "to value CHT at more than $300 million" for purposes of consummating the Go-Private Transaction.  Compl. ¶¶ 27-44, 60-77.  To execute their fraud, the Debtors allege that Former Management went to "great lengths" to make it appear that the Debtors' operating subsidiaries had "substantial customer revenue" by "falsifying and fabricating bank records of subsidiary entities" to present a phony picture of "CHT's revenue streams," "generating fake income streams and phony customers of CHT and its subsidiaries", and "making material misrepresentations and omissions" to a private investment firm and others.  *Id.* ¶¶ 31-32.

The Debtors allege that the scheme "orchestrated by Former Management" caused them "extensive and long-lasting economic harm," for which the Debtors now seek to spread liability to Robinson Brog.  Specifically, the Debtors allege that Robinson Brog "assisted" the fraud by "forming the [alleged] sham entities", preparing alleged "sham acquisition documents" and "receiving, holding, and distributing" funds related to the alleged "sham transactions."  *Id.* ¶¶ 29, 59.  Significantly, the Debtors nowhere allege that Robinson Brog played any role in falsifying bank records, generating fake income streams or phony customers, or that Robinson Brog made

any material misrepresentations or omissions in connection with the Go-Private Transaction. Nor do the Debtors allege that Robinson Brog had any actual knowledge of the Debtors' fraud.

On the basis of these allegations, the Debtors seek to recover alleged damages of not less than $50 million for legal malpractice (Count I), aiding and abetting breach of fiduciary duty (Count II); and breach of fiduciary duty (Count III). The Debtors also assert a claim for unjust enrichment (Count IV) demanding disgorgement of legal fees paid to Robinson Brog. Finally, the Debtors object to Robinson Brog's Proofs of Claim on grounds of duplication and lack of documentation (Count V). The Debtors also seek to equitably subordinate Robinson Brog's claims against the estate (Count VI).

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions" and "naked assertion[s] devoid of further factual enhancement" do not suffice. *Id.* (citation omitted). A claim is not "plausible" unless the complaint's non-conclusory allegations of wrongdoing are "more likely" than any lawful, alternative explanation. *Id.* at 678-683. The plausibility standard is intended to avoid the "potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support [plaintiff's] claim." *Twombly*, 550 U.S. at 559-560 (internal quotation marks omitted).

In addition, where, as here, a plaintiff alleges fraudulent knowledge or misconduct, the allegations must satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("By its terms, Rule 9(b) applies

to 'all averments of fraud.'"); *O'Connell v. Arthur Anderson LLP (In re Alphastar Ins. Grp. Ltd.)*, 383 B.R. 231, 259-264 (Bankr. S.D.N.Y. 2008) (dismissing plaintiff's fraud-based claims on grounds that they failed to meet the Rule 9(b) standard). Further, to state a plausible claim for relief, a plaintiff must necessarily, as a threshold jurisdictional matter, have standing to assert that claim. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991) ("*Wagoner*").

## I.     THE DEBTORS' CLAIMS ARE BARRED BY APPLICATION OF THE *WAGONER* RULE AND THE *IN PARI DELICTO* DOCTRINE

The Debtors' state law claims for legal malpractice (Count I), aiding and abetting breach of fiduciary duty (Count II), breach of fiduciary duty (Count III), and unjust enrichment (Count IV) are barred by the Second Circuit's *Wagoner* rule and New York's doctrine of *in pari delicto*. Each of these claims must be dismissed.

### A.     The Debtors Lack Standing To Pursue Their Claims

The Debtors lack standing to assert their state law claims under the Second Circuit's *Wagoner* rule. Per *Wagoner*, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the [debtor-in-possession] cannot recover against the third party for the damage to the creditors." *Wagoner*, 944 F.2d at 118; *see also Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co.)*, 280 B.R. 794, 800 (Bankr. S.D.N.Y. 2002) (debtor-in-possession is prohibited under *Wagoner* from asserting claims where its management is alleged to have been "complicit in the wrongdoing allegedly perpetrated by a third-party defendant"). This well-established principle "draws on the state law affirmative defense of *in pari delicto* and standard agency principles which allow the imputation of management's misconduct to the corporation itself." *In re PHS Grp. Inc.*, 581 B.R. 16, 30 (Bankr. E.D.N.Y. 2018); *see also In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 100 (2d Cir. 2003) ("The rationale for the Wagoner rule is the

fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation.") (internal citations and quotation marks omitted); *Kirschner v. Grant Thornton LLP*, 2009 WL 1286326, at *5, 2009 U.S. Dist. LEXIS 32581, at *17-18 (S.D.N.Y. Apr. 14, 2009). ("Because management's misconduct is imputed to the corporation, and because a [debtor-in-possession] stands in the shoes of the corporation, the *Wagoner* rule bars a [debtor-in-possession] from suing to recover for a wrong that he himself essentially took part in.").

Courts have consistently applied the *Wagoner* rule to dismiss claims against professionals that arise from the fraud or misconduct of a debtor's former management. *See, e.g.*, *Matter of Mediators, Inc.*, 190 B.R. 515, 528 (S.D.N.Y. 1995) (dismissing claims for malpractice against outside lawyers and accountants because, as in *Wagoner*, the corporation "consented to and participated in the transactions" that formed the basis of trustee's allegations), *aff'd sub nom. In re Mediators, Inc.*, 105 F.3d 822 (2d Cir. 1997); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995) (holding that under *Wagoner* rule trustee lacked standing to assert professional malpractice claims against auditor); *In re Complete Mgmt., Inc.*, No. 02 CIV. 1736 NRB, 2003 WL 21750178, at *3-4 (S.D.N.Y. July 29, 2003) (same); *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 709 (S.D.N.Y. 2001) (same). Moreover, because the *Wagoner* rule is a question of standing, the Debtors bear the burden of showing why it should not apply. *See In re PHS Grp. Inc.*, 581 B.R. at 31 (noting that the Wagoner rule "is a question of standing, and since standing is a jurisdictional matter, it is the burden of the party who seeks the exercise of jurisdiction in his favor to clearly allege facts showing he is the proper party to invoke these claims against the defendants") (internal citations and quotation marks omitted).

Here, the Debtors have not met their burden of alleging standing to bring their claims against Robinson Brog.   The Complaint expressly contends that Former Management was responsible for the wrongdoing alleged against Robinson Brog.  *See, e.g.*, Compl. ¶ 2 (alleging that the "scheme was perpetrated by the Debtors' former management team"); ¶ 27 (alleging that Former Management "orchestrated a widespread scheme to defraud investors and others out of hundreds of millions of dollars in connection with a merger transaction"); ¶ 32 (alleging that "Former Management went to great lengths to … falsify[ ] and fabricat[e] bank records of subsidiary entities in order to generate a phony picture of CHT's revenue streams … generat[e] fake income streams and phony customers of CHT and its subsidiaries … mak[e] material misrepresentations and omissions to the private investment firm and others").  Because Former Management's alleged conduct is imputed to the Debtors, the Debtors took part in the alleged wrongdoing, and are barred from recovery for it.  Thus, under the *Wagoner* Rule, Counts I-IV must be dismissed.

**B.      The Debtors' Claims Are Barred By The *In Pari Delicto* Doctrine**

The doctrine of *in pari delicto* also applies to completely bar the state law claims asserted by the Debtors in this adversary proceeding.[10]  *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464, 938 N.E.2d 941, 912 N.Y.S.2d 508 (2010).  "The doctrine prohibits one party from suing another where the plaintiff was 'an active, voluntary participant in the unlawful activity that is the subject of the suit.'"  *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp.2d 157, 189

---

[10]      While courts sometimes use the *Wagoner* rule and the doctrine of *in pari delicto* interchangeably, the two are not the same.  "The *Wagoner* Rule is one of standing.  *In pari delicto* is an equitable defense analogous to unclean hands rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct."  *Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.)*, 329 B.R. 411, 423 n.5 (Bankr. S.D.N.Y. 2005) (quotation omitted).  The imputation analysis under both doctrines, however, is substantially the same.  *See Official Comm. of Unsecured Creditors of Verestar Inc. v. American Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 479-80 (Bankr. S.D.N.Y. 2006).

(S.D.N.Y. 2014) (quoting *Pinter v. Dahl*, 486 U.S. 622, 636 (1988)).  Significantly, courts will not use their equitable powers to help a party whose own wrongful misconduct is related to the claim on which it seeks to recover.  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.,* 322 F.3d 147, 163 (2d Cir. 2003).   "[T]he principle that a wrongdoer should not profit from his own misconduct is so strong in New York that [courts] have said the defense applies even in difficult cases and should not be 'weakened by exceptions.'"  *Kirschner*, 15 N.Y.3d at 464 (citing *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960)).  "Early resolution [of the *in pari delicto* defense] is appropriate where (as here) the outcome is plain on the face of the pleadings."  *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC)*, 721 F.3d 54, 63 (2d Cir. 2013) (applying New York law); *see also Kirschner*, 15 N.Y.3d at 459 n.3 ("*[I]n pari delicto* may be resolved on the pleadings in an appropriate action.").

Courts in New York have repeatedly held that the *in pari delicto* doctrine is a complete defense to professional malpractice claims by corporations against professional accountants and attorneys who allegedly assisted wrongful conduct by management.  *See, e.g., Kirschner*, 15 N.Y.3d at 476 (*in pari delicto* doctrine bars accounting malpractice claim); *Chaikovska v. Ernst & Young, LLP*, 78 A.D.3d 1661, 1662, 913 N.Y.S.2d 449, 451 (4th Dep't 2010) (same); *Holtkamp v. Parklex Assocs.*, 30 Misc.3d 1226(A), at *8-9, 926 N.Y.S.2d 344 (Table) (Sup. Ct. Kings Cty. 2011) (dismissing legal malpractice claims under *in pari delicto* doctrine), *aff'd* 94 A.D.3d 819 (2d Dep't 2013); *Metro. Plaza WP, LLC v. Goetz Fitzpatrick, LLP*, No. 11519/2009, 2013 WL 5574533, at *7-11 (Sup. Ct. N.Y. Cty. Sept. 30, 2013) (same).

As discussed above, the Complaint is replete with allegations that the Debtors—through Former Management—committed fraud and breached fiduciary obligations.  *See supra* at p. 9;

Compl. ¶¶ 27-44, 60-77.  Accordingly, the Debtors cannot now seek to assign fault to others for

their own fraud.  As the Debtors' allegations are more than sufficient to establish an *in pari*

*delicto* defense, the Debtors' claims must be dismissed.

### C.    The Adverse Interest Exception Is Inapplicable

The Debtors cannot salvage their claims under the so-called "adverse interest" exception.

New York "reserves this most narrow of exceptions [to imputation] for those cases—outright

theft or looting or embezzlement—where the insider's misconduct benefits only himself or a

third party; *i.e.* where the fraud is committed *against* a corporation rather than on its behalf."

*Kirschner*, 15 N.Y.3d at 466-67 (emphasis in original).  "So long as the corporate wrongdoer's

fraudulent conduct enables the business to survive—to attract investors and customers and raise

funds for corporate purposes"—the adverse interest exception does not apply.  *Id.* at 468; *see*

*also Picard v. Merkin*, 440 B.R. 243, 148 (Bankr. S.D.N.Y. 2010) (a corporation benefits when it

enjoys "an aura of profitability" that enables it to attract more investors).  "[T]he mere fact that a

corporation is forced to file for bankruptcy does not determine whether its agents' conduct was,

at the time it was committed, adverse to the company."  *Kirschner*, 15 N.Y.3d at 468.

Critically, "[w]here a corporation benefits *to any extent* from the alleged wrongful acts of

its agents, the agents cannot be said to have 'totally' abandoned the corporation's interests."

*Bullmore v. Ernst & Young Cayman Islands*, 20 Misc.3d 667, 672, 861 N.Y.S.2d 578, 582 (Sup.

Ct. N.Y. Cty. 2008) (emphasis added); *see also Stokoe v. Marcum & Kliegman LLP*, 135 A.D.3d

645, 645, 24 N.Y.S.3d 267, 268 (1st Dep't 2016) ("New York requires *complete adversity* in

order to fall within the exception to the imputation rule of the in pari delicto doctrine.")

(emphasis added).  Courts have repeatedly found that any "benefit," no matter how small or

short-term, is enough to trump the adverse interest exception.  *See ICP* at 619; *Kirschner*, 15

N.Y.3d at 465; *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 150 A.D.3d 492, 497, 56

N.Y.S.3d 12, 19 (1st Dep't 2017). An agent's conduct that allows the principal the opportunity to survive, even for a short period of time, is a benefit that makes the adverse interest exception inapplicable. *See In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 612 (S.D.N.Y. 2017) (dismissing action against DLA Piper; holding that "[s]imply *entertaining the possibility* that the market would improve and *buying additional time* [for] Triaxx to recover conveyed a benefit to the [SCIF] Funds") (emphasis added); *see also Kirschner*, 15 N.Y.3d at 468.

The Debtors' conclusory allegations that "[d]uring the entirety of the fraudulent schemes, Former Management totally abandoned the Debtors' interests and were acting solely for their own pecuniary gain," Compl. ¶ 28, are insufficient to satisfy the "most narrow" adverse interest exception. *First*, to invoke this exception, a plaintiff is required to make a detailed factual showing of total abandonment. *See Symbol Techs., Inc. v. Deloitte & Touche, LLP*, 69 A.D.3d 191, 197, 888 N.Y.S.2d 538, 542 (2d Dep't 2009) (to fit within the "adverse interest" exception "[t]he corporation must show that the agent's fraud was entirely self-interested and that the corporation did not benefit in any way"). The Debtors have made no such showing here. *Second*, to the contrary, the Debtors' own affirmative allegations in the Complaint *undermine* the "adverse interest" exception by showing that they benefitted from Former Management's fraud. *See* Compl. ¶¶ 27-35, 57, 78-86 (alleging that Former Management orchestrated a complex scheme to overvalue CHT so that investors would pay a premium in connection with a merger transaction to convert CHT into a private company); ¶ 34 (CHT benefited from the Go-Private Transaction by obtaining from CC Capital, financing "totaling $82.5 million of cash (as equity) and $130.0 million in financing from certain institutional lenders (plus a $15.0 million commitment)"); ¶¶ 34, 84 (alleging that CHT continued to operate for over a year after the Go-Private Transaction was consummated on January 30, 2017); ¶¶ 37, 39-41 (alleging that the

Debtors did not file their Chapter 11 bankruptcy petition until six months after Parmar resigned as CEO and Zaharis and Chivukula were placed on administrative leave).  And *third*, even if the Complaint successfully alleged total abandonment, the Debtors' allegations in other filings would undermine that conclusion.  *See Orion Healthcorp Inc., v. Parmijit Singh Parmar (In re Orion Healthcorp. Inc.)*, 18-08053, Dkt. 24 (Am. Complaint), ¶¶ 109-10 (alleging that the Debtors benefitted from the acts of their agents through new sources of shareholder capital and debt financing); *id.* ¶¶ 68, 76-85, 143-45 (alleging that the Debtors survived for more than two years after formation of the alleged conspiracy); *see also In re: Orion Healthcorp, Inc.*, 18-71748 (Bankr. E.D.N.Y.), Dkt. 2 (Dragelin Decl.) at ¶¶ 90, 102 (funds from public offerings associated with "sham acquisitions" were used to, among other things, "create the impression of revenue from fictitious customers").

The more specific allegations in the Complaint and the Debtors' pleadings elsewhere are fatal to any arguments the Debtors may raise for application of the adverse interest exception. *See Concord Capital Mgmt., LLC v. Bank of Am., N.A.*, 102 A.D.3d 406, 406, 958 N.Y.S.2d 93, 94 (1st Dep't 2013) (dismissing action under the *in pari delicto* doctrine because, "although the complaint alleges that plaintiffs' former executives looted plaintiffs, it also alleges that the corrupt executives' scheme *brought millions of dollars* into plaintiffs' coffers and *allowed plaintiffs to survive for a few years*") (emphasis added).

## II.  THE RELEASE AGREEMENT PRECLUDES THE DEBTORS FROM FILING SUIT

Under New York law, releases are contracts interpreted according to principles of contract law. *Shklovskiy v. Khan*, 273 A.D.2d 371, 372, 709 N.Y.S.2d 208, 209 (2d Dep't 2000). "It is well established in New York that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement

17

between parties." *Skylon Corp. v. Guilford Mills, Inc.*, 864 F. Supp. 353, 358 (S.D.N.Y. 1994) (internal quotations and citations omitted); *see also Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977) ("When, as here, a release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if 'the language of the release is clear ... the intent of the parties [is] indicated by the language employed.'") (citation omitted). In the absence of a fiduciary relationship, a party seeking to avoid an otherwise valid release "has the burden of proving vitiating circumstances." *Skylon Corp.*, 864 F. Supp. at 358.

The Release at issue here is clearly written. The "Releasing Parties" under Section 4(d)(i) includes CHT Holdco and "its affiliates, predecessors, successors, assigns, heirs, executors, legatees, administrators, beneficiaries, representatives and agents." Ex. K. Since CHT, at the time the Release Agreement was executed, and pursuant to the Merger Agreement, became a wholly-owned subsidiary of CHT Holdco, it necessarily is an "affiliate" of CHT Holdco and, therefore, also a Releasing Party within the meaning of Section 4 (d)(i).[11] As "Releasing Parties," CHT Holdco and CHT released Robinson Brog from any and all Released Matters, including all claims, causes of action and damages related to CHT or arising from the Merger.

CHT Holdco and CHT, as "Releasing Parties," agreed not to sue any of the "Released Parties," including attorneys under Section 4(d)(v). Thus, the Release Agreement bars not only CHT's pre-Merger shareholders, but also CHT (as CHT Holdco's affiliate) and the Debtors (as CHT's affiliates) from asserting claims against Robinson Brog. Accordingly, CHT's claims in

---

[11]     Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary 69 (10th ed. 2014); *see also BOKF, N.A. v. Caesars Entm't Corp.*, 162 F. Supp.3d 243, 246 n.5 (S.D.N.Y. 2016) (when interpreting contracts courts "commonly refer to dictionary definitions" to determine the plain and ordinary meaning of terms).

the Complaint are barred, and must be dismissed, under the express language of the Release Agreement. *See Generale Bank, New York Branch v. Wassel*, 779 F. Supp. 310, 319 (S.D.N.Y. 1991) (applying New York law and holding general release executed without knowledge of claim for fraud bars claim nonetheless).

## III.    THE DEBTORS FAIL TO ADEQUATELY STATE CLAIMS FOR RELIEF

Putting aside the *Wagoner* rule, *in pari delicto*, and the Release Agreement, each of which is dispositive individually, the Complaint still fails to state claims upon which relief can be granted.

### A.    The Legal Malpractice Claim (Count I) Fails As A Matter Of Law

The Debtors' legal malpractice claim fails as a matter of law for two additional reasons. Pleading a claim for legal malpractice under New York law requires the Debtors to allege: (1) an attorney-client relationship at the time of the alleged malpractice, (2) attorney negligence, and (3) actual damage to the client that is proximately caused by the attorney's negligence. *Bryant v. Monaghan*, 2018 U.S. Dist. LEXIS 130146 (S.D.N.Y. Aug. 1, 2018). Here, the Complaint fails to plead either that Robinson Brog acted with negligence or that Robinson Brog's alleged "malpractice" was the proximate cause of the Debtors' losses. This claim should be dismissed.

#### 1.    The Debtors Fail To Allege That Robinson Brog Performed Legal Services With Negligence

An attorney is only negligent if he or she fails to exercise that degree of care, skill and diligence commonly possessed and exercised by ordinary members of the legal community. *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442, 867 N.E.2d 385, 387, 835 N.Y.S.2d 534, 536 (2007).

The Complaint alleges that Robinson Brog provided "substantial legal representation" to the Debtors in various transactional and litigation matters (Compl. ¶ 47), but nowhere alleges

that Robinson Brog performed these services negligently—that is, by failing to exercise that degree of care, skill and diligence commonly possessed and exercised by ordinary members of the legal community.   For instance, the Debtors nowhere claim that Robinson Brog filed incorrect certificates of formation, drafted ineffective agreements, or failed to comply with client instructions regarding funds held in escrow.

While it is difficult to parse the Complaint, the Debtors appear to imply that Robinson Brog's negligence lay in failing to uncover the Debtors' own fraud perpetrated by Former Management.[12]   But tellingly, the Debtors fail to present any allegations that might explain why Robinson Brog was negligent in not discovering Former Management's misconduct when KPMG, McKinsey, Black Duck, Winston & Strawn, Richards Layton and other top-tier professionals were unable to do so after conducting extensive legal and financial due diligence over a period of months.   This is especially true as the Complaint nowhere asserts that Robinson Brog was provided with any internal business records of the Debtors or any other documents from which it could have discovered the Debtors' alleged fraudulent scheme, or that Robinson Brog was involved in or had knowledge of the Debtors' falsification of bank records, generation of fake income and customers of the Debtors, material misrepresentations to the private investment firm in connection with the Go-Private Transaction.

Moreover, Robinson Brog was not retained to investigate the Debtors' financial affairs and the Debtors cannot plausibly assert that Robinson Brog should have succeeded where experts *specifically retained to perform financial and legal due diligence* failed, and where the fraud was only uncovered after a targeted forensic investigation by FTI. *See Delollis v. Archer*, 2013 N.Y. Misc. LEXIS 1873 (Sup. Ct. Suffolk Cty. April 12, 2013) (finding no cause of action

---

[12]     As illustrated above, the Debtors suing Robinson Brog for failing to detect *their own fraud* is both ironic and prohibited.

for legal malpractice where (i) numerous financial experts reviewed and analyzed the plaintiff investment positions, (ii) defendant law firm was not retained for that purpose, and (iii) plaintiffs failed to allege how law firm's alleged negligence caused injury to the plaintiff), *aff'd*, 128 A.D.3d 755 (2nd Dep't 2015); *see also Abrams v. DLA Piper (US) LLP*, 2013 U.S. Dist LEXIS 82484, at *20-22 (N.D. Ind. June 12, 2013) (plaintiff failed to plausibly plead that law firm breached its duties where firm "did not have a duty to give the Debtor business advice as to the advisability of its business transactions").

### 2.    The Debtors Fail To Allege That Robinson Brog Was The Proximate Cause Of The Debtors' Losses

The Debtors allege no facts showing that Robinson Brog proximately caused the Debtors' losses.  A "claim of professional malpractice 'requires proof that there was a departure from accepted standards of practice and that the departure was a proximate cause of the injury.'" *Talon Air Servs. LLC v. CMA Design Studio, P.C.*, 86 A.D.3d 511, 515, 927 N.Y.S.2d 643, 646 (1st Dep't 2011).   But the Debtors allege only that Robinson Brog filed certificates of incorporation and assisted in the preparation of acquisition documents for so-called "sham entities" and served as the Debtors' escrow agent.  Compl. ¶ 139.  And the Debtors draw no connection between these ministerial actions and the losses they complain of and do not specify what was Robinson Brog's departure from accepted standards of practice.  *See Kaminsky v. Herrick, Feinstein LLP*, 59 A.D.3d 1, 12, 870 N.Y.S.2d 1, 10 (1st Dep't 2008) (affirming summary judgment for defendant on claim of legal malpractice because plaintiff could not establish that but for the attorney's negligence, the outcome of the matter would have been substantially different).   To the contrary, as the Complaint alleges, *Former Management* allegedly perpetrated "a large, complex and brazen fraudulent scheme that resulted in the theft of

over $300 million." Compl. ¶ 2. By the Debtors' own allegations, Former Management caused the Debtors' losses; not Robinson Brog.

### B.    The Debtors Fail To Plead Claims For Aiding And Abetting Breach Of Fiduciary Duty (Count II)

The particularity requirement of Rule 9(b), Fed. R. Civ. P., apples to claims of breach of fiduciary duty and aiding and abetting a breach of fiduciary duty. *See Kyrs v. Surgue (In re Refco Inc. Sec. Litig.)*, No. 07 MDL 1902 (JSR), 2012 U.S. Dist. LEXIS 19915 (S.D.N.Y. Feb. 10, 2012) (quoting *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp.2d 423, 464 (S.D.N.Y. 2006) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary claims where the breach is premised on the [underlying wrongdoer's] fraudulent conduct.")); *Sheppard v. Manhattan Club Timeshare Ass'n*, 2012 U.S. Dist. LEXIS 72902, at *23 (S.D.N.Y. May 23, 2012) ("When a breach of fiduciary duty claim is premised upon fraudulent misconduct, Rule 9(b) applies."); *Sotheby's, Inc. v. Minor*, 2009 U.S. Dist. LEXIS 99332, at *23 (S.D.N.Y. Oct. 26, 2009) (applying the Rule 9(b) standard to breach of fiduciary duty claim predicated on concealment of a financial conflict of interest).

The Debtors' claim for aiding and abetting breach of fiduciary duty should be dismissed because the Debtors do not plead that Robinson Brog had "actual knowledge" of Former Management's alleged misconduct, or that Robinson Brog rendered substantial assistance to Former Management in connection with their alleged breaches of fiduciary duty to the Debtors. *See Baron v. Galasso*, 83 A.D.3d 626, 628-29, 921 N.Y.S.2d 100, 104 (2d Dep't 2011) (to survive a motion to dismiss a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must plead that defendant had actual knowledge of the breach of duty" and "provide[d] substantial assistance to the primary violator"); *see also Kaufman v. Cohen*, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 169 (1st Dep't 2003). Allegations of constructive knowledge – as

opposed to actual knowledge – are insufficient. *Brasseur v. Speranza*, 21 A.D.3d 297, 299, 800 N.Y.S.2d 669, 671 (1st Dep't 2005) (citing *Kaufman*, 307 A.D.2d at 125, 760 N.Y.S.2d at 169). Indeed, in *Brasseur* "bare allegations that the agent 'knew or should have known' of numerous instances of the Board's breach of fiduciary duty was insufficient to satisfy [the actual-knowledge element]." *Brasseur*, 21 A.D.3d at 299.  Further, mere allegations that an attorney assisted its client in structuring transactions do not give rise to a claim.

In the instant case, the Debtors make no allegations demonstrating, or even suggesting, that Robinson Brog knew about Former Management's alleged breaches of fiduciary duty to the Debtors.  Allegations suggesting that Robinson Brog "knew or should have known" of a breach of fiduciary duty have been *explicitly rejected* as a basis for aiding and abetting a breach of fiduciary duty under New York law.  *See Baron*, 83 A.D.3d at 629, 921 N.Y.S.2d at 104; *see also Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) ("Actual knowledge is required to impose liability on an aider and abettor under New York law.") (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)).  And under Rule 9(b), a conclusory assertion of actual knowledge will not be credited.  *See Krys*, 749 F.3d at 131.  The Complaint's sole allegation concerning Robinson Brog's knowledge states, in a single paragraph, the conclusory assertion that Robinson Brog aided and abetted Former Management's breach of fiduciary duty by "failing to act when it knew that Former Management was breaching their fiduciary duties owed to Debtors." Compl. ¶ 144. This claim, which is entirely unsupported by other facts in the Complaint, fails to meet the required showing of actual knowledge, and accordingly, the Debtors' claim for aiding and abetting breach of fiduciary claim should be dismissed.

The Debtors also fail to adequately plead the "substantial assistance" requirement.  Under New York law, a defendant substantially assists in the commission of a tort when it affirmatively

asserts, helps conceal, or enables the tort to proceed.  *In re Jeweled Objects LLC*, 2012 WL 3638006, at *11 (Bankr. S.D.N.Y. 2012).   Substantial assistance "means more than just performing routine business services for the alleged fraudster." *CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470, 472, 925 N.Y.S.2d 439, 441 (1st Dep't 2011) (citing *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 11, 865 N.Y.S.2d 14 (1st Dep't 2008)).   It "occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Id.* (citations omitted).   An attorney may not be held liable for aiding and abetting based on nothing more than the act of giving legal advice to his client or, more broadly stated, for engaging in the traditional tasks performed by an attorney.  *See, e.g., Broad-Bussel Family LP v. Bayou Group LLC (In re Bayou Hedge Funds Inv. Litig.)*, 472 F. Supp.2d 528, 534 (S.D.N.Y. 2007); *Art Capital Group, LLC v. Neuhaus*, 70 A.D.3d 605, 606-7, 896 N.Y.S.2d 35, 37 (1st Dep't 2010); *Pearl v. 305 E. 92nd St. Corp.*, 156 A.D.2d 122, 122, 548 N.Y.S.2d 25, 25 (1st Dep't 1989).

In this case, Robinson Brog could not affirmatively help conceal or fail to stop the commission of a tort that they knew nothing about and could not plausibly discover.  *See In re Jeweled Objects, LLC*, 2012 WL 3638006, at *11.  Indeed, the Debtors plead only that Robinson Brog provided the Debtors with routine legal services that do not amount to "substantial assistance" necessary to plead a claim for aiding and abetting a breach of fiduciary duty.  *See Gregor v. Rossi*, 120 A.D.3d 447, 449, 992 N.Y.S.2d 17, 19 (1st Dep't 2014) ("[A]llegations that . . . attorneys prepared merger documents and a shareholder agreement are allegations of ordinary professional activity, not substantial assistance."); *see also Roni LLC v. Arfa*, 72 A.D.3d 413, 414, 897 N.Y.S.2d 421 (1st Dep't 2010) ("[T]he allegation that the Attorney Defendants structured the transactions at issue does not, without more, give rise to a reasonable inference

24

that such professionals were aware" of the tort), *aff'd*, 15 N.Y.3d 826, 935 N.E.2d 791, 909 N.Y.S.2d 1 (2010) ("conclusory pleadings do not give rise to an inference that the attorney defendants knowingly participated in the alleged aiding and abetting of a breach of a fiduciary duty by providing substantial assistance to the promoter defendants in their purported commission scheme"). Thus, the claim for aiding and abetting breach of fiduciary duty should be dismissed.

### C.    The Debtors' Claim For Breach Of Fiduciary (Count III) Is Fatally Deficient

To establish a claim for breach of fiduciary duty, "a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Don Lia v. Saporito*, 909 F. Supp.2d 149, 170 (E.D.N.Y. 2012). Here, the Debtors contend that Robinson Brog breached its fiduciary duty by concealing information that prevented the Debtors from discovering Former Managements' alleged fraudulent scheme. Specifically, after asserting that they "were unaware of the fraud being perpetrated by Former Management" (Compl. ¶ 152), the Debtors allege that Robinson Brog failed to disclose conflicts of interest and failed to warn Debtors about Former Management's bad acts. *Id.* ¶ 153. The Debtors' breach of fiduciary duty claim must satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b). But it cannot.

As with their claim for legal malpractice, the Debtors fail to allege that Robinson Brog's supposed breach of fiduciary duty was the "but for" cause of any such damages. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, 629 F. Supp.2d 259, 262 (S.D.N.Y. 2007) (noting that to defeat a motion to dismiss, "plaintiff must, at a minimum, establish that [the defendant's] actions were a substantial factor in causing an identifiable loss") (citation and quotation marks omitted). Indeed, the Complaint does not articulate how Debtors were injured or identify any connection between Robinson Brog's conduct and Debtors'

purported damages.  "In the absence of a causal link between [Robinson Brog's] alleged wrongful conduct and [the Debtors'] alleged damages, the complaint must be dismissed." *LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454, 465-66 (2d Cir. 1999).

Moreover, absent any suggestion that Robinson Brog was the "but for" cause of an ascertainable loss, Debtors' allegations about conflicts of interest are irrelevant.  *See Trautenberg*, 629 F. Supp. 2d at 263 ("[I]t is well-established that the violation of a disciplinary rule, without more, does not establish a claim for breach of fiduciary duty."); *Cobble Creek Consulting, Inc. v. Sichenzia Ross Friedman Ference LLP,* 110 A.D.3d 550, 551, 973 N.Y.S.2d 595, 596 (1st Dep't 2013) (dismissing claims for legal malpractice and breach of fiduciary duty where "[p]laintiffs...alleged without elaborating, that defendant failed to advise them to seek independent counsel", but "failed to allege how this omission proximately caused their injuries").  The Debtors' breach of fiduciary claim should therefore be dismissed.

### D.    The Debtors Fail To Adequately Allege A Claim For Unjust Enrichment (Count IV)

The Debtors predicate their unjust enrichment claim in Count IV of the Complaint on their contention that Robinson Brog's fees were "for work done on behalf of Former Management to accomplish their fraudulent scheme."  Compl. ¶ 156.  The unjust enrichment claim is fatally deficient for the same reasons that the Debtors' malpractice and breach of fiduciary duty claims are fatally deficient and dismissible.

Moreover, the Debtors' factual assertions are insufficient to sustain their claim.  The Debtors simply state, in conclusory fashion, that "all legal fees for Robinson Brog's representation of Former Management were paid from the proceeds of Debtors."  Compl. ¶ 53.  First, there are no allegations in the Complaint to support the Debtors' apparent belief that Robinson Brog was paid for services rendered to Parmar from debtor-related funds.  Moreover,

the Debtors do not identify the legal fees allegedly associated with Former Management's "fraudulent scheme," or otherwise explain the payments that it contends Robinson Brog improperly received. *See* Compl. ¶ 156. Indeed, the fact that Robinson Brog is owed over $440,000.00 in unpaid legal fees for services rendered to the Debtors,[13] as detailed in the Proofs of Claim, plainly belies any claim that Robinson Brog was unjustly enriched. In light of the foregoing, Count IV of the Complaint should be dismissed with prejudice.[14]

## IV. THE DEBTORS' CLAIM OBJECTIONS (COUNTS V-VI) ARE SPECIOUS AND SHOULD BE DISMISSED

The Complaint's objection to the Proofs of Claim (Count V) should be rejected. The Debtors allege that Robinson Brog's claims are not entitled to administrative expense status or secured status, that some claims are duplicates and that certain, unidentified claims, lack appropriate documentation. Each of these arguments must fail.

*First*, the Proofs of Claim were filed in strict compliance with the Adequate Protection Order, which resolved Robinson Brog's claims of adequate protection of its retaining lien under New York state law. The Adequate Protection Order explicitly stated that "Robinson Brog *is granted* an administrative expense claim with the same priority as administrative claims allowed pursuant to Sections 503(b)(1)(A), 507(a)(2)...." May 25, 2018 Order [Dkt. 256, Case No. 18-

---

[13] The only legal fees sought by Robinson Brog from Debtors that involved services rendered to Parmar were in connection with Parmar's exit agreement and were undertaken at the request of Debtors' then representative.

[14] The Debtors' claims should also be dismissed as duplicative given that they are all based on the same underlying factual allegations. *See, e.g.*, *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 271, 780 N.Y.S.2d 593, 596 (1st Dep't 2004) ("[W]e have consistently held that [a claim for breach of fiduciary duty], premised on the same facts of seeking the identical relief sought in the legal malpractice cause of action is redundant and should be dismissed.") (citations omitted); *The Diversified Group, Inc. v. Daugerdas*, 139 F. Supp.2d 445, 460-461 (S.D.N.Y. 2001) (dismissing unjust enrichment claim where claim was duplicative of breach of fiduciary claim and damages accruing may be recovered under breach of fiduciary duty claim); *Rath v. Pitcher*, No. 12-CV-6543L, 2014 U.S. Dist. LEXIS 42404 (W.D.N.Y. Mar. 28, 2014) (dismissing unjust enrichment claim as duplicative of malpractice claim).

71748 (AST)] (emphasis added). Under the Adequate Protection Order, the *only* requirement for Robinson Brog to obtain administrative status for its claims is that those claims be timely filed. The Debtors cannot attempt to re-litigate the Adequate Protection Order, which they never appealed or sought reconsideration of (and in fact consented to), by challenging the administrative status of Robinson Brog's claims, to the extent ultimately allowed by the Court.

*Second*, the Debtors allege that some claims are duplicative. Robinson Brog acknowledges that claims 10018 and 10019 are duplicative of claims 10021 and 10022 and that 10018 and 10019 should be expunged as duplicates. In fact, Robinson Brog notified Epiq, the Debtors' claims agent, of this duplication (and that 10021 and 10022 were the operative claims) the day after these claims were filed after Robinson Brog encountered technical difficulties in uploading backup documentation in relation to its claims. Rice Decl. ¶ 4.

*Third*, all of the claims filed by Robinson Brog have complete documentation by way of bills for the services rendered which support the claims, except for claims 10018 and 10019, which Robinson Brog agrees should be expunged as duplicates.

In addition, the Complaint's request to equitably subordinate the valid claims filed by Robinson Brog should be rejected. *See* Compl. ¶¶ 167-170. To state a claim for equitable subordination under section 510(c) of the Bankruptcy Code, the Debtors must allege specific facts showing that (i) Robinson Brog "engaged in inequitable conduct; (ii) the misconduct caused injury to the creditors or conferred an unfair advantage to [Robinson Brog]; and (iii) bestowing the remedy of equitable subordination is not inconsistent with bankruptcy law." *In re Blockbuster Inc.*, No. 10 Adv. Pro. 5524, 2011 WL 1042767, at *3-4 (Bankr. S.D.N.Y. Mar. 17, 2011). Because "[e]quitable subordination is an extraordinary remedy that is to be used sparingly," courts routinely dismiss such claims at the pleading stage. *Kalisch v. Maple Trade*

*Fin. Corp. (In re Kalisch)*, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008), *aff'd*, 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009) (dismissing equitable subordination claim on motion to dismiss); *see also In re Hydrogen LLC*, 431 B.R. 337, 362 (Bankr. S.D.N.Y. 2010) (same); *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings)*, 420 B.R. 112, 156-57 (Bankr. S.D.N.Y. 2009) (same); *In re Universal Foundry*, 163 B.R. 528, 538-541 (E.D. Wis. 1993) (same).

The Debtors' burden is even greater where, as here, they seek to subordinate the claim of a non-insider.   In that situation, "[t]he conduct required has been described as 'substantial misconduct tantamount to fraud, misrepresentation, overreaching or spoilation [sic].'"   *Off. Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 364 (Bankr. S.D.N.Y. 2002) (citations omitted).   The misconduct must be so egregious that it "shocks one's good conscience."   *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994).   As a result, "[f]ew cases find that non-insider, non-fiduciary claimants meet this standard." *In re Sunbeam Corp.*, 284 B.R. at 364.

The only basis for this relief in the Complaint is "the facts set forth in this Complaint." *Id.* at ¶ 169.   But as set forth at length above, each and every one of the causes of action asserted by the Debtor against Robinson Brog fails as a matter of law, and the Debtors have alleged no culpable knowledge or behavior justifying this extreme remedy against Robinson Brog, a non-insider.   Because the Debtors' other claims are inadequate, the equitable subordination claim— which must be grounded on a detailed pleading of even more egregious conduct—must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Motion should be granted and the Complaint

dismissed in its entirety with prejudice.

Dated: September 20, 2018
       New York, NY

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
By: */s/ Alex Spiro*
Alex Spiro
Lindsay Weber (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Email: alexspiro@quinnemanuel.com
lindsayweber@quinnemanuel.com

L'ABBATE, BALKAN, COLAVITA &
CONTINI LLP
Marian C. Rice, Esq.
James D. Spithogiannis, Esq.
1001 Franklin Avenue
Garden City, New York 11530
Email: mrice@lbcclaw.com
JSpithogiannis@lbcclaw.com

*Co-Counsel to Robinson Brog Leinwand
Greene Genovese & Gluck P.C., A. Mitchell
Greene, and Adam Greene*