UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, LLC | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

ORION HEALTHCORP, INC., et al.,

Plaintiffs,

v.                                                                      Adv. Pro. No. 18-08104 (AST)

ROBINSON BROG LEINWAND GREENE GENOVESE
& GLUCK, P.C., A. MITCHELL GREENE, AND ADAM
GREENE,

Defendants.

-------------------------------------------------------------------x

## SUPPLEMENTAL DECLARATION OF MARIAN C. RICE IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT AND OBJECTION TO PROOFS OF CLAIM

MARIAN C. RICE, an attorney, declares the following to be true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a member of L'Abbate, Balkan, Colavita & Contini, L.L.P., co-counsel for Defendants Robinson Brog Leinwand Greene Genovese & Gluck, P.C., A. Mitchell Greene, and Adam Greene (collectively, "Robinson Brog"), in the above-referenced adversary proceeding.

2.      I submit this Supplemental Declaration and the accompanying Reply Memorandum of Law, dated October 31, 2018, in further support of Robinson Brog's motion (the "Motion"), pursuant to section 105(a) of the Bankruptcy Code and Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, for an order dismissing with prejudice the Complaint and Object to Proofs of Claim [Dkt. 1] (the "Complaint") filed by plaintiffs (collectively, the "Debtors") in the above-captioned adversary proceeding.

3.      I submit true and correct copies of the following exhibits in further support of the Motion:

> Exhibit M -    May 9, 2013 engagement letter signed by Paul Parmar on behalf of himself and his companies, Bates-stamped RB 00001319 – RB 00001321, and previously produced to the Debtors

2

4.      I also submit herewith a corrected Exhibit K, which is intended to supplement Exhibit K attached to my original declaration at Docket No. 7.  The Exhibit K to my original declaration inadvertently included a duplicate signature page.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2018.

_____

Marian C. Rice

# EXHIBIT K

## Voting and Support Agreement and Release of Claims

VOTING AND SUPPORT AGREEMENT AND RELEASE OF CLAIMS (this "Agreement"), dated as of November 24, 2016, by and among the Stockholder listed on the signature page hereto (together with any subsequent stockholder or transferees who become a "Stockholder" pursuant to Section 3 below, each individually, a "Stockholder"), Constellation Healthcare Technologies, Inc., a Delaware corporation (the "Company") and CHT Holdco, LLC, a Delaware limited liability company ("Parent"). Capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to them in the Merger Agreement (as defined below).

WHEREAS, as of the date hereof, the Stockholder is the beneficial owner of the number of shares of Common Stock set forth opposite such Stockholder's name on Schedule A hereto (together with such additional shares of capital stock that become beneficially owned (within the meaning of Rule 13d-3 promulgated under the Exchange Act) by such Stockholder, whether upon the exercise of options, conversion of convertible securities or otherwise, to the extent applicable, after the date hereof until the Expiration Date, the "Subject Shares");

WHEREAS, on November 24, 2016, the Company, Parent and CHT Mergersub, Inc., a Delaware corporation ("Sub") entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which, upon the terms and subject to the conditions thereof, Sub will be merged with and into the Company (the "Merger"), with the Company surviving the Merger as a wholly owned subsidiary of Parent;

WHEREAS, each of the Board and the Special Committee has adopted resolutions, at meetings duly called at which a quorum of members of the Board and the Special Committee, respectively, were present, (i) approving the execution, delivery and performance of the Contemplated Transactions, including the Merger, (ii) determining that entering into this Agreement is advisable and in the best interests of the Company and its stockholders and (iii) recommending that the Company's stockholders execute and deliver this Agreement pursuant to the Merger Agreement; and

WHEREAS, as a condition and inducement to the willingness of the Company and Parent to enter into the Merger Agreement, the Company and Parent have required that stockholders representing at least 89% of the issued and outstanding shares of Common Stock enter into this Agreement, and, in support of the foregoing, the Stockholder desires to enter into this Agreement to induce the Company and Parent to consummate the Contemplated Transactions;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein, and intending to be legally bound hereby, the parties hereby agree, severally and not jointly, as follows:

1.    Voting of Shares.  Stockholder hereby agrees that unless there has been a Superior Proposal Determination, prior to the Expiration Date (as hereinafter defined), at every meeting of the Company stockholders called with respect to any of the following, and at every adjournment thereof, and in every action or approval by written consent of the Company stockholders in lieu of such a meeting with respect to any of the following, Stockholder shall vote or cause to be

voted the Subject Shares and any other shares of Common Stock that Stockholder purchases, or with respect to which Stockholder otherwise acquires record or beneficial ownership or voting control, after the execution of this Agreement and prior to the Expiration Date, including by way of the exercise of any equity awards of the Company (collectively, the "Additional Shares"): (a) in favor of (i) adoption of the Merger Agreement and (ii) approval of any matter that is reasonably necessary to facilitate the Merger and other transactions contemplated by the Merger Agreement and this Agreement, (b) in favor of waiving any notice that may have been or may be required relating to the Merger or any of the other transactions contemplated by the Merger Agreement or this Agreement (including, to the extent that any such notice requirement may be construed or deemed to apply to the Merger or any of the other transactions contemplated by the Merger Agreement or this Agreement, any notice that may have been or may be required relating to any reorganization, reclassification or recapitalization of the capital stock, sale of stock or assets, change in control, or acquisition of the Company, or any consolidation, merger, share exchange reorganization or other business combination transaction involving the Company), and (c) against (i) any action (including any amendment to the Certificate of Incorporation, as amended, or By-Laws, as in effect on the date hereof), agreement or transaction that would reasonably be expected to frustrate the purposes of, impede, hinder, interfere with, nullify, prevent, delay or adversely affect the consummation of the transactions contemplated by the Merger Agreement, (ii) any Competing Proposed Transaction (as hereinafter defined) and any action in furtherance of any Competing Proposed Transaction, or (iii) any action, proposal, transaction or agreement that would reasonably be expected to result in a breach of any covenant, representation or warranty or any other obligation or agreement of Stockholder under this Agreement or of the Company under the Merger Agreement. Any such vote shall be cast (and each consent shall be given) by Stockholder in accordance with such procedures relating thereto so as to ensure that it is duly counted, including for purposes of determining that a quorum is present and for purposes of recording the results of such vote or consent. Stockholder acknowledges that Parent shall have the right and may elect at any time to seek to acquire some or all of the Common Stock of the Company through an offer to purchase such Common Stock directly from the Company stockholders (a "Tender Offer"). If such a Tender Offer is made at a per share of Common Stock price equal to or greater than the per share price used in the Merger Agreement, Stockholder hereby agrees, confirms, warrants and represents that any obligations under this Agreement related to the Merger Agreement and Contemplated Transactions shall apply mutatis mutandis to such Tender Offer and, in particular, Stockholder shall accept, or obtain the acceptance of, such Tender Offer, in respect of the Subject Shares within the applicable period of time set forth in the materials accompanying such Tender Offer. Stockholder further agrees, if so required by Parent, to execute or obtain the execution of all such other documents as may be necessary for the purpose of giving Parent the full benefit to Parent of the obligations of Stockholder under this Agreement as such obligations apply to the Tender Offer.

2.    Irrevocable Proxy. The Stockholder hereby revokes (or agrees to cause to be revoked) any and all previous proxies granted with respect to the Subject Shares. By entering into this Agreement, the Stockholder hereby grants a proxy appointing Parent as the Stockholder's attorney-in-fact and proxy, with full power of substitution, for and in the Stockholder's name, to vote, express consent or dissent, or otherwise to utilize such voting power in the manner contemplated by Section 1 above as Parent or its proxy or substitute shall, in Parent's sole discretion, deem proper with respect to the Subject Shares. The proxy granted

2

hereby is irrevocable and is granted in consideration of Parent and Sub entering into the Merger Agreement and consummating the Contemplated Transactions, as well as the incurrence of related fees and expenses in connection with the execution and delivery of this Agreement. The proxy granted by the Stockholder shall not be exercised to vote, consent or act on any matter except as contemplated by Section 1 above. The proxy granted hereby shall be revoked, terminated and of no further force or effect, automatically and without further action, upon termination of this Agreement in accordance with Section 9 hereof.

3.    No Transfer of Shares. The Stockholder covenants and agrees that during the period from the date of this Agreement through the Expiration Date, the Stockholder will not, without the prior written consent of the Company and Parent, directly or indirectly: (a) grant any proxies, or enter into any voting trust or other contract or agreement, with respect to the voting of the Subject Shares, (b) Transfer or otherwise dispose of, or enter into any contract or agreement with respect to the direct or indirect Transfer or other disposition of, any Subject Shares, or (c) take any other action that would make any representation or warranty of the Stockholder contained herein untrue or incorrect in any material respect or in any way restrict, limit or interfere in any material respect with the performance of the Stockholder's obligations hereunder, or seek to do or solicit any of the foregoing actions, or cause or permit any other Person to take any of the foregoing actions. Notwithstanding the foregoing, the Stockholder may transfer Subject Shares held by the Stockholder to a trust for the benefit of the Stockholder or any member of the Stockholder's immediate family; provided, that a transfer referred to in this sentence shall be permitted only if, as a precondition to such transfer, the transferee agrees in a writing, reasonably satisfactory in form and subject to the Company and Parent, to be bound by all the terms and conditions of this Agreement. For purposes of this Agreement, "Transfer" means any direct or indirect transfer, sale, assignment, pledge, hypothecation, grant of a security interest in or other disposal of all or any portion of the Subject Shares.

4.    Additional Covenants of the Stockholders

(a)    Further Assurances. From time to time and without additional consideration, the Stockholder shall execute and deliver, or cause to be executed and delivered, such additional instruments, and shall take such further actions, as the Company may reasonably request for the purpose of carrying out the intent of this Agreement.

(b)    Communications. The Stockholder, and each of the Stockholder's Affiliates, if any, shall not, and shall cause their respective officers, directors, employees or other representatives, if any, not to, directly or indirectly, make any press release, public announcement or other public communication that criticizes or disparages this Agreement, the Merger Agreement, the Contemplated Transactions or the Tender Offer, without the prior written consent of the Parent and Company. The Stockholder hereby (i) consents to and authorizes the publication and disclosure by the Company and Parent in any filings, applications, agreements or other documents of (a) the Stockholder's identity, (b) the Subject Shares, and (c) the nature of the Stockholder's commitments, arrangements and undertakings pursuant to this Agreement, and (ii) agrees as promptly as practicable to notify the Company and Parent of any required corrections with respect to any written information supplied by the Stockholder specifically for use in any such disclosure document. Notwithstanding the foregoing, nothing herein shall limit or affect any actions taken by the Stockholder or any of the Stockholder's representatives who is

any officer of the Company or a member of the Board, solely in their capacity as such, provided that such actions are taken in compliance with the terms and conditions of the Merger Agreement.

(c)    Additional Shares.  In the event that the Stockholder acquires additional shares of Common Stock that were not Subject Shares as of the date hereof, or acquires the power to dispose of or vote or direct the disposition or voting of, any additional shares of Common Stock that were not Subject Shares as of the date hereof, such additional shares of Common Stock shall, without further action of the parties, be subject to the provisions of this Agreement, and the number of Subject Shares set forth herein will be deemed to be amended accordingly.  The Stockholder shall promptly notify the Company and Parent of any such event.

(d)    Release of Claims.

(i)    **Release of Claims**. The Stockholder on behalf of itself, and its affiliates, predecessors, successors, assigns, heirs, executors, legatees, administrators, beneficiaries, representatives and agents (the "Releasing Parties"), fully, finally and irrevocably releases, acquits and forever discharges to the fullest extent permitted by law (the "Release") the Company, Parent and each of their respective affiliates and each of the respective officers, directors, predecessors, successors and assigns of any of them and the beneficiaries, heirs, executors, personal or legal representatives, insurers, attorneys and other representatives of any of the foregoing (collectively, the "Released Parties"), from any and all commitments, actions, charges, complaints, promises, agreements, controversies, debts, claims, counterclaims, suits, causes of action, damages, demands, liabilities, obligations, costs and expenses of every kind and nature whatsoever, whether arising from any express, implied, oral or written contract or agreement or otherwise, known or unknown, past, present or future, at law or in equity, contingent or otherwise (collectively, a "Potential Claim"), that such Releasing Parties, or any of them, had, has or may have had at any time in the past or that may arise in the future, against the Released Parties, or any of them, for or by reason of any matter, cause or thing whatsoever occurring at any time at or prior to the Closing with respect to the Company, the shares of Common Stock, or the Merger, including without limitation any claim for appraisal rights in connection with the Merger, any claims relating to or arising in connection with any Taxes, penalties or interest incurred pursuant to the Code, or the regulations promulgated thereunder by the U.S. Department of the Treasury (the "Treasury Regulations"), including any gross-ups or indemnities in respect thereof (collectively, the "Released Matters"), except that the Released Matters do not include, and nothing in this Release shall affect or be construed as a waiver or release by Releasing Parties of, any Potential Claim by any of the Releasing Parties arising from or relating to (1) fees, salary, reimbursement for expenses, bonuses, change of control payments, or other compensation or employment benefits, if any, earned or accrued by or for the benefit of any of the Releasing Parties at or prior to the Closing in respect of services performed by any of the Releasing Parties as an employee, consultant or director of the Company or any of its subsidiaries, (2) the payment of the Merger Consideration for the Stockholder's shares of Common Stock on and subject to the terms and conditions of the Merger Agreement, or (3) rights of exculpation, indemnification or contribution, whether arising under the Company's Organizational Documents, any agreement between

4

the Company and any of the Releasing Parties, or otherwise, in respect of services provided by any of the Releasing Parties as an employee or director of the Company, including any rights to coverage under any insurance policies, in each case, other than any claims relating to or arising in connection with any Taxes, penalties or interest incurred pursuant to the Code or the Treasury Regulations, including any gross-ups or indemnities in respect thereof.

(ii)     **No Transfer of Potential Claims.**  The Stockholder represents and warrants to the Released Parties that it has made no assignment or transfer of any of the Potential Claims for any Released Matter.

(iii)     **Release not Considered an Admission.**  The Stockholder acknowledges and agrees that the furnishing of the consideration for this Release will not be deemed or construed at any time to be an admission by the Stockholder or any Released Party of any improper or unlawful conduct.

(iv)     **Waiver of Unknown Claims.**  With respect to any and all Potential Claims for any Released Matter, the Stockholder expressly waives and relinquishes, and the other Releasing Parties shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of any other jurisdiction or principle of common law that provides that a general release does not extend to claims that are unknown or unsuspected to the releasor at the time the releasor executes the release. The Stockholder acknowledges that the inclusion of such unknown Potential Claims herein was separately bargained for and was a key element of this Agreement. Stockholder acknowledges, and the other Releasing Parties shall be deemed to have acknowledged, that they may hereafter discover facts which are different from or in addition to those that they may now know or believe to be true with respect to any and all Potential Claims herein released and agree that all such unknown Potential Claims are nonetheless released and that this Release shall be and remain effective in all respects even if such different or additional facts are subsequently discovered.

(v)     **Covenant Not to Sue.**  The Stockholder hereby irrevocably covenants to refrain from, and to cause all Releasing Parties controlled by it to refrain from, asserting any Potential Claim, or commencing, instituting or causing to be commenced, any action, proceeding, charge, complaint, or investigation of any kind against any of the Released Parties, in any forum whatsoever (including, without limitation, any administrative agency), that arises out of, relates in any way to, or is based upon, any of the Released Matters, including agreeing not to commence or participate in, and to take all actions necessary to opt out of any class in any class action with respect to, any claim, derivative action or other Legal Proceeding, against the Released Parties, as the case may be, relating to the negotiation, execution or delivery of this Agreement or the Merger Agreement or the consummation of any of the Contemplated Transactions, including any Legal Proceeding (x) challenging the validity of, or seeking to enjoin the operation of, any provision of this Agreement or the Merger Agreement or the consummation of any of the Contemplated Transactions, or (y) alleging a breach of any fiduciary duty of the

Board in connection with the this Agreement, the Merger Agreement or any of the Contemplated Transactions.

(vi)    **Sufficiency of Consideration.** The Stockholder acknowledges and agrees that the Merger Consideration paid in respect of the Stockholder's Subject Shares owned beneficially or of record by the Stockholder (Parent's obligation for payment of which was conditioned upon receipt of this Release) and payable to the Stockholder pursuant to the Merger Agreement and the covenants of the Company, Parent, Sub and the Surviving Corporation includes consideration for this Release and provides good and sufficient consideration for every promise, duty, release, obligation, agreement and right contained in this Release.

(vii)    **Basis of Defense; Attorneys' Fees.** This Release may be pleaded by the Released Parties as a full and complete defense and may be used as the basis for an injunction against any action at law or in equity instituted or maintained against them in violation of this Release. In the event any Potential Claim is brought or maintained by the Stockholder or any Releasing Party against the Released Parties in violation of this Release, the Stockholder shall be responsible for all costs and expenses, including reasonable attorneys' fees, incurred by the Released Parties in defending same; provided, that Stockholder will not be responsible for such costs, expenses and fees, if any, in an aggregate amount that exceeds the amount of the Merger Consideration in respect of all Subject Shares sold by the Stockholder.

(viii)    **Third-Party Beneficiaries.** The Stockholder acknowledges and agrees that each of the Released Parties, including Parent, Sub and the Surviving Corporation, are intended to be third-party beneficiaries of this Release, and will be entitled to enforce the provisions herein against the Releasing Parties to the same extent as if the Released Parties were parties hereto.

(e)    <u>No Solicitation.</u>

(i)    Except as set forth in or permitted by the Merger Agreement, until the Expiration Date, Stockholder shall not take nor shall Stockholder authorize or permit any of Stockholder's officers, directors, employees, stockholders, Affiliates, attorneys, investment bankers, financial advisers, and agents (its "<u>Representatives</u>") to take (directly or indirectly) any of the following actions with any Person other than Parent and its designees: (a) solicit, initiate, facilitate or encourage any proposal or offer from, or participate or engage in or conduct any discussions or negotiations with, any Person relating to any inquiry, contact, offer or proposal, oral, written or otherwise, formal or informal, with respect to any possible business combination with the Company (a "<u>Competing Proposed Transaction</u>"), (b) provide any information with respect to the Company or its business to any Person other than Parent, relating to (or which Stockholder believes would be used for the purpose of formulating an offer or proposal with respect to), or otherwise assist, cooperate with, facilitate or encourage any effort or attempt by any such Person with regard to, a Competing Proposed Transaction, (c) approve or agree to or enter into a contract with any Person other than Parent with respect to a Competing Proposed Transaction, (d) make or authorize any statement,

recommendation, solicitation or endorsement in support of any Competing Proposed Transaction, or (e) authorize or permit any of the Company's Representatives to take any such action.

(ii)    Except as set forth in or permitted by the Merger Agreement, Stockholder shall immediately cease and cause to be terminated any such contacts or negotiations with any Person relating to any Competing Proposed Transaction. In addition to the foregoing, if (after this Agreement is signed and delivered by Stockholder and prior to the Expiration Date) Stockholder receives any offer or proposal (formal or informal, oral, written or otherwise) relating to, or any inquiry or contact from any Person with respect to, a Competing Proposed Transaction, Stockholder shall immediately notify Parent thereof and provide Parent with the details thereof, and will keep Parent fully informed on a current basis of the status and details of any such offer or proposal and of any modifications to the terms thereof.

(iii)    Subject to the terms of the Merger Agreement, nothing in this Agreement shall be construed to prohibit any Stockholder or any of such Stockholder's representatives who is an officer or member of the Board from taking any action in his or her capacity as an officer or member of the Board.

5.    <u>Representations and Warranties of Each Stockholder</u>. The Stockholder represents and warrants to the Company and Parent as follows:

(a)    <u>Authority</u>. The Stockholder has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement has been duly authorized, executed and delivered by the Stockholder and constitutes a valid and binding obligation of the Stockholder enforceable in accordance with its terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity (regardless of whether considered in a proceeding in equity or at law). If the Stockholder is a trust, no consent of any beneficiary is required for the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby. Other than as provided in the Merger Agreement and any filings by the Stockholder required by a Governmental Entity, the execution, delivery and performance by the Stockholder of this Agreement does not require any consent, approval, authorization or permit of, action by, filing with or notification to any Governmental Entity, other than any consent, approval, authorization, permit, action, filing or notification the failure of which to make or obtain would not, individually or in the aggregate, be reasonably expected to prevent or materially delay the consummation of the Merger or the Stockholder's ability to observe and perform the Stockholder's material obligations hereunder.

(b)    <u>No Conflicts</u>. Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby, nor compliance with the terms hereof, will violate, conflict with or result in a breach of, or constitute a default (with or without notice or lapse of time or both) under any provision of, any trust agreement, loan or credit agreement, note, bond, mortgage, indenture, lease or other agreement, instrument, permit, concession, franchise, license, judgment, order, notice, decree, statute, law, ordinance, rule or regulation applicable to the Stockholder or to the Stockholder's property or assets.

(c)     The Subject Shares. The Stockholder is the record and beneficial owner of, or is a trust or estate that is the record holder of and whose beneficiaries are the beneficial owners of, and has good and marketable title to, the Subject Shares set forth opposite the Stockholder's name on Schedule A hereto, free and clear of any and all security interests, liens, changes, encumbrances, equities, claims, options or limitations of whatever nature and free of any other limitation or restriction (including any restriction on the right to vote, sell or otherwise dispose of such Subject Shares), other than any of the foregoing that would not prevent or delay the Stockholder's ability to perform the Stockholder's obligations hereunder. The Stockholder does not own, of record or beneficially, any shares of capital stock of the Company other than the Subject Shares set forth opposite such Stockholder's name on Schedule A hereto. There are no agreements or arrangements of any kind, contingent or otherwise, obligating such Stockholder to Transfer, or cause to be Transferred, any of the Subject Shares set forth opposite such Stockholder's name on Schedule A hereto and (ii) no Person has any contractual or other right or obligation to purchase or otherwise acquire any of such Subject Shares.

(d)     Reliance by the Company and Parent. The Stockholder understands and acknowledges that the Company and Parent will only consummate the Contemplated Transactions in reliance upon the obligations of the Stockholder set forth in this Agreement, and that the execution and delivery of this Agreement is, and adherence to the terms and conditions set forth herein are, a fundamental condition to the performance of the obligations of Parent and Sub pursuant the Merger Agreement.

(e)     Reliance by the Stockholder. The Stockholder represents and warrants that the Stockholder has read the Merger Agreement and this Agreement in their entireties and has been provided with full and complete access to the announcement made by the Company on November 25, 2016 (the "Announcement"), the Proxy Statement and all other documentation related to the transaction, including any public filings or disclosures. Neither the Company, Parent nor any of their respective affiliates or representatives has made any representation or warranty, express or implied, as to the accuracy or completeness of any information concerning the Company contained made available in connection with the Stockholder's decision to enter into this Agreement, except as expressly set forth in Section 6 or Section 7 of this Agreement, and the Company, Parent and their respective affiliates and representatives expressly disclaim any and all liability that may be based on such information or errors therein or omissions therefrom. The Stockholder has not relied and is not relying on any statement, representation or warranty, oral or written, express or implied, made by the Company, Parent or any of their respective affiliates or representatives, except as expressly set forth in Section 6 or Section 7. Neither the Company, Parent nor any of their respective affiliates or representatives shall have any liability to the Stockholder resulting from the use of any information, documents or materials made available to the Stockholder, whether orally or in writing, in any confidential information memoranda, "data rooms," management discussions or in any other form in expectation of this Agreement. The undersigned represents and warrants that the undersigned has (1) been advised to consult with his, her or its tax, legal and other advisors regarding (i) this Agreement and its effects and (ii) the tax and other economic consequences of providing or not entering into this Agreement and (2) obtained, in the undersigned's judgment, sufficient information to evaluate the merits and risks of executing this Agreement and approving and adopting the Merger Agreement. All authority conferred or agreed to be conferred in this Agreement will be binding upon the undersigned and the undersigned's successors, assigns, heirs, executors, administrators and legal representatives, and will not be affected by and will survive his or her death or

incapacity. The Stockholder is a sophisticated investor and has made its own independent investigation, review and analysis regarding the Company and its Subsidiaries and the transactions contemplated hereby, which investigation, review and analysis were conducted by the Stockholder together with expert advisors, including legal counsel, that it has engaged for such purpose.

6.     <u>Representations and Warranties of the Company</u>. The Company represents and warrants to the Stockholder as follows: The Company is a corporation duly incorporated, validly existing and in good standing under the Laws of the State of Delaware and has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement and the Merger Agreement by the Company and the consummation of the Contemplated Transactions have been duly and validly authorized by the Board, and no other corporate proceedings on the part of the Company are necessary to authorize the execution, delivery and performance of this Agreement, the Merger Agreement by the Company and the consummation of the Contemplated Transactions. The Company has duly and validly executed this Agreement, and this Agreement constitutes a legal, valid and binding obligation of the Company enforceable against the Company in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization or other similar Laws affecting creditors' rights generally and by general equitable principles (regardless of whether enforceability is considered in a proceeding in equity or at law).

7.     <u>Representations and Warranties of the Parent</u>. The Parent represents and warrants to the Stockholder as follows: The Parent is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Delaware and has full limited liability company power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement and the Merger Agreement by the Parent and the consummation of the Contemplated Transactions have been duly and validly authorized by the governing body of Parent, and no other limited liability company proceedings on the part of the Parent are necessary to authorize the execution, delivery and performance of this Agreement, the Merger Agreement by the Parent and the consummation of the Contemplated Transactions. The Parent has duly and validly executed this Agreement, and this Agreement constitutes a legal, valid and binding obligation of the Parent enforceable against the Parent in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization or other similar Laws affecting creditors' rights generally and by general equitable principles (regardless of whether enforceability is considered in a proceeding in equity or at law).

8.     <u>Stockholder Capacity</u>. No Person executing this Agreement who is or becomes during the term hereof a director or officer, or any other similar function or capacity, of the Company, Parent or any other Person shall be deemed to make any agreement or understanding in this Agreement in such Person's capacity as a director or officer, or any other similar function or capacity. The Stockholder is entering into this Agreement solely in such Stockholder's capacity as the record holder or beneficial owner of, or as a trust whose beneficiaries are the beneficial owners of, Subject Shares and nothing herein shall limit or affect any actions taken (or any failures to act) by Stockholder in Stockholder's capacity as a director or officer, or any other similar function or capacity, of the Company, Parent or any other Person, if applicable. The

taking of any actions (or any failures to act) by Stockholder in Stockholder's capacity as a director or officer, or any other similar function or capacity, of the Company, Parent or any other Person shall not be deemed to constitute a breach of this Agreement, regardless of the circumstances related thereto.

9.      Termination. This Agreement shall automatically terminate without further action upon the earliest to occur (the "Expiration Date") of: (A) the termination of the Merger Agreement in accordance with its terms, and (B) the date that is set forth in the written agreement of the Stockholder, the Company and the Parent to terminate this Agreement.

10.     Specific Performance. The Stockholder acknowledges and agrees that (a) the covenants, obligations and agreements contained in this Agreement relate to special, unique and extraordinary matters, (b) the Company and Parent are relying on such covenants in connection with consummating the Contemplated Transactions and (c) a violation of any of the terms of such covenants, obligations or agreements will cause the Company and Parent irreparable injury for which adequate remedies are not available at law and for which monetary damages are not readily ascertainable. Therefore, the Stockholder agrees that the Company and Parent shall each be entitled to obtain an injunction, restraining order or such other equitable relief (without the requirement to post bond) as a court of competent jurisdiction may deem necessary or appropriate to restrain such Stockholder from committing any violation of such covenants, obligations or agreements. Injunctive relief shall not be the exclusive remedy available to the Company and Parent, and the Company and Parent reserve all rights to seek any other remedy available to them at law or in equity in connection with any violation of threatened violation of the terms and conditions of this Agreement.

11.     Governing Law; Jurisdiction.

(a)     This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. In addition, each of the parties hereto irrevocably agrees that any legal action or proceeding with respect to this Agreement and the rights and obligations arising hereunder, or for recognition and enforcement of any judgment in respect of this Agreement and the rights and obligations arising hereunder brought by the other party hereto or its successors or assigns, shall be brought and determined exclusively in the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or, if the Delaware Court of Chancery declines to accept jurisdiction over a particular matter, any federal court within the State of Delaware).

(b)     Each of the parties hereto hereby irrevocably submits with regard to any such action or proceeding for itself and in respect of its property, generally and unconditionally, to the personal jurisdiction of the aforesaid courts and agrees that it will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than the aforesaid courts. Each of the parties hereto hereby irrevocably waives, and agrees not to assert as a defense, counterclaim or otherwise, in any action or proceeding with respect to this Agreement, (i) any claim that it is not personally subject to the jurisdiction of the above named courts for any reason other than the failure to serve in accordance with this Section 11, (ii) any

claim that it or its property is exempt or immune from the jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (iii) to the fullest extent permitted by the applicable Law, any claim that (x) the suit, action or proceeding in such court is brought in an inconvenient forum, (y) the venue of such suit, action or proceeding is improper or (z) this Agreement, or the subject matter hereof, may not be enforced in or by such courts.

12.    WAIVER OF JURY TRIAL. EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN. EACH PARTY MAKES THIS WAIVER VOLUNTARILY AND SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS CONTAINED IN THIS SECTION 12.

13.    Amendment, Waivers, etc. Neither this Agreement nor any term hereof may be amended or otherwise modified other than by an instrument in writing signed by the Stockholder, the Company and Parent. No provision of this Agreement may be waived, discharged or terminated other than by an instrument in writing signed by the party against whom the enforcement of such waiver, discharge or termination is sought.

14.    Assignment; No Third Party Beneficiaries. This Agreement shall not be assignable or otherwise transferable by a party without the prior written consent of the other parties, and any attempt to so assign or otherwise transfer this Agreement without such consent shall be void and of no effect. This Agreement shall be binding upon the respective heirs, successors, legal representatives and permitted assigns of the parties hereto. Nothing in this Agreement shall be construed as giving any Person, other than the parties hereto and their heirs, successors, legal representatives and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provision hereof.

15.    Notices. All notices, consents and other communications hereunder shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by hand delivery, by prepaid overnight courier (providing written proof of delivery), by confirmed facsimile transmission or by certified or registered mail (return receipt requested and first class postage prepaid), addressed as follows:

(a)    if to Parent or Sub, to:

CC Capital Management, LLC
555 Madison Avenue, 26th Floor
New York, NY 10022
Facsimile: (212) 588-8713
Attention: Chinh Chu

with copies (which shall not constitute notice) to:

Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006-3817
Facsimile: (202) 282-5100
Attention: Chris Zochowski, Esq.

(b)     if to the Company, to:

Constellation Healthcare Technologies, Inc.
3200 Wilcrest Drive, Suite 600
Houston, TX 77042
Facsimile: (212) 956-2164
Attention: Chief Executive Officer

with copies to:

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue
New York, NY 10022
Facsimile: (212) 956-2164
Attention: Adam Greene, Esq.

(c)     if to the Special Committee, to

Constellation Healthcare Technologies, Inc.
3200 Wilcrest Drive, Suite 600
Houston, TX 77042
Facsimile: (212) 446-4900
Attention: Special Committee

with copies to:

McGuireWoods LLP
1345 Avenue of the Americas
7th Floor
New York, NY 10105-0106
Facsimile: (212) 715-6291
Attention: Stephen Older, Esq. and Jeffrey Rothschild, Esq.

(c)     if to the Stockholder, to

Constellation Healthcare Technologies, Inc.
3200 Wilcrest Drive, Suite 600
Houston, TX 77042
Facsimile: (212) 446-4900
Attention: Special Committee

16.    Severability. Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the sole extent of such invalidity or unenforceability without rendering invalid or unenforceable the remainder of such term or provision or the remaining terms and provisions of this Agreement in any jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable.

17.    Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings between the parties with respect thereto. No addition to or modification of any provision of this Agreement shall be binding upon either party unless made in writing and signed by both parties.

18.    Section Headings. The article and section headings of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

19.    Counterparts. This Agreement may be executed in two or more counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

20.    No Agreement as Director or Officer. The Stockholder makes no agreement or understanding in this Agreement in the Stockholder's capacity as a director or officer of the Company or any of its subsidiaries (if the Stockholder holds such office), and nothing in this Agreement (a) will limit or affect any actions or omissions taken by the Stockholder in the Stockholder's capacity as such a director or officer, including in exercising rights under the Merger Agreement, and no such actions or omissions shall be deemed a breach of this Agreement or (b) will be construed to prohibit, limit or restrict the Stockholder from exercising the Stockholder's fiduciary duties as an officer or director to the Company or its stockholders; provided, however, that the foregoing shall not limit any obligations, duties or requirements to comply with any term, provision or condition set forth in the Merger Agreement.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

CONSTELLATION HEALTHCARE
TECHNOLOGIES, INC.

By: _____
Name:  PaulParmjit Parmar
Title:    President

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

CHT HOLDCO, LLC

By: _____

Name: PaulParmjit Parmar

Title:  Manager

## Schedule A

| Stockholder | Shares of Common Stock |
| --- | --- |

EXHIBIT M

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

875 THIRD AVENUE

NEW YORK, NEW YORK 10022-0123

(212) 603-6300

FAX (212) 956-2164

A. Mitchell Greene
(212) 603-6399
amg@robinsonbrog.com

May 9, 2012

Paul Parmar
19 Colts Gait Lane
Colts Neck, NJ 07722

Re:    Retention of Robinson Brog with respect to general corporate matters

Dear Mr. Parmar:

Thank you for selecting Robinson Brog Leinwand Greene Genovese & Gluck P.C. (the "Firm") to represent you in connection with the above-referenced matter.

You have requested us to represent you and companies you directly or indirectly control in connection with general corporate matters.

We believe in providing quality service to our clients and it is very important to us that you are completely satisfied. We endeavor to make assignments to the Firm personnel to insure the highest quality work, while at the same time providing services in the most cost-efficient manner. Experience has shown us that an essential component of your satisfaction is an understanding of the business arrangement. In addition, the Administrative Board of the Courts in New York has a rule requiring attorneys to provide you with a written letter of engagement.

Our fees for services rendered by us in connection with this engagement will be at the regular rates charged by the Firm for the person who performs the services. Our rates are subject to change from time-to-time, and clients are not normally notified in advance of any change. The hourly billing rates for the Firm range from $400 to $600 for principals; $275 to $375 for associates; and $150 to $185 for paralegals.

Generally, work will be supervised by A. Mitchell Greene, whose rate is $600.00 per hour, and Adam J. Greene, whose rate is $395.00 per hour, although the discretionary right to assign work to other attorneys in the Firm is specifically reserved.

{00623545.DOCX;1 }

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

May 9, 2013
Page 2

In connection with our representation and possible litigation, we anticipate that certain disbursements may be incurred. These disbursements may include, but are not limited to, delivery charges, long distance telephone charges, special postage (express mail, certified mail and the like), deposition transcripts, court filing fees, process server fees, courier services, photocopying, and other out-of-pocket expenses incurred in connection with our representation of you (collectively, "Disbursements").

All bills or invoices for legal services rendered and Disbursements incurred shall be sent to you for review and you agree to carefully review them and to promptly notify us in writing of any dissatisfaction, errors or discrepancies in such bills or invoices within ten (10) days of the date of the bill or invoice. Otherwise, it will be presumed that you agree with the correctness, fairness, and accuracy of such bill or invoice.

At all times, you shall have the right to terminate our services upon written notice to that effect. In the event that you fail, to cooperate with any reasonable request or to timely pay the bills or invoices rendered in accordance with this engagement letter, or if we shall determine that to continue with legal services would be unethical or impractical, we shall have the right to terminate our services upon written notice to that effect. You acknowledge and agree that, if our bills or invoices are not timely paid, and we terminate our services as provided herein, we shall have the right to terminate our services to you. In the event our services are terminated, all fees for unbilled legal services and Disbursements shall be billed or invoiced and the unearned portion of any fee theretofore paid under this engagement letter shall be refunded and any unpaid amounts shall be immediately due and payable.

This engagement letter shall be governed by the laws of the State of New York without regard to conflict of law principles, and you hereby consent to jurisdiction in the courts of New York. Notwithstanding the foregoing, you shall have the right to Arbitration of fee disputes pursuant to Part 137 of the Rules of the Chief Administrator. Should you require any additional information concerning your rights to mediate fee disputes, we will be happy to furnish same to you.

This engagement letter may contain signatures obtained by telefacsimile (and/or sent by pdf) and may be executed in counterparts.

{00623545.DOCX:1 }

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

May 9, 2013
Page 3

We appreciate your confidence in the Firm and we assure you that we shall make every effort to perform our services in a prompt and efficient manner. We look forward to a long and mutually satisfying relationship with you. If, at any time, you have a question or concern, please do not hesitate to bring it to our attention.

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK, P.C.

By: _____
A. Mitchell Greene

ACCEPTED AND AGREED:

Date:

Paul Parmar

{00623545.DOCX;1 }