QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Alex Spiro, Esq.
Lindsay Weber, Esq.

L'ABBATE, BALKAN, COLVITA &
CONTINI LLP
1001 Franklin Avenue
Garden City, New York 11530
Marian C. Rice, Esq.
James D. Spithogiannis, Esq.

*Co-Counsel to Robinson Brog Leinwand Greene*
*Genovese & Gluck P.C., A. Mitchell Greene, and Adam Greene*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| In re: | x | Chapter 11 |
|---|---|---|
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------  x

{00966263.DOCX;1 }

ORION HEALTHCORP, INC.                                    x
CONSTELLATION HEALTHCARE TECHNOLOGIES, INC.    :    Adv. Pro. No. 18-08104
NEMS ACQUISITION, LLC                                     :
NORTHEAST MEDICAL SOLUTIONS, LLC                          :
NEMS WEST VIRGINIA, LLC                                   :
PHYSICIANS PRACTICE PLUS, LLC                             :
PHYSICIANS PRACTICE PLUS HOLDINGS, LLC                    :
MEDICAL BILLING SERVICES, INC.                            :
RAND MEDICAL BILLING, INC.                                :
RMI PHYSICIAN SERVICES CORPORATION                        :
WESTERN SKIES PRACTICE MANAGEMENT, INC.                   :
INTEGRATED PHYSICIAN SOLUTIONS, INC.                      :
NYNM ACQUISITION, LLC                                     :
NORTHSTAR FHA, LLC                                        :
NORTHSTAR FIRST HEALTH, LLC                               :
VACHETTE BUSINESS SERVICES, LTD.                          :
MDRX MEDICAL BILLING, LLC                                 :
VEGA MEDICAL PROFESSIONALS, LLC                           :
ALLEGIANCE CONSULTING ASSOCIATES, LLC                     :
ALLEGIANCE BILLING & CONSULTING, LLC                      :
PHOENIX HEALTH, LLC                                       :
                                                          :
                        Plaintiffs,                       :
                                                          :
v.                                                        :
                                                          :
ROBINSON BROG LEINWAND GREENE GENOVESE &                  :
GLUCK P.C., A. MITCHELL GREENE AND ADAM GREEN,            :
                                                          :
                        Defendants.                       :
----------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROBINSON BROG'S
MOTION TO DISMISS COMPLAINT AND OBJECTION TO PROOFS OF CLAIM**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

THE DEBTORS' REQUESTS FOR ADDITIONAL DISCOVERY ARE NOTHING MORE THAN DELAY TACTICS ...................................................................3

ARGUMENT.............................................................................................................5

I.      THIS ACTION IS BARRED BY *WAGONER* AND *IN PARI DELICTO* ........................5

     A.      Choice-Of-Law Standard ...................................................................5

     B.      New York Law Applies To The Claims At Issue....................................6

     C.      The Debtors Fail To Allege That The Adverse Interest Exception Applies..........11

II.     THE RELEASE ALSO REQUIRES DISMISSAL OF THIS SUIT .................................12

     A.      The Debtors Are Included In The Definition Of Releasing Party ........13

     B.      The Release Is Not Ambiguous .........................................................16

III.    THE DEBTORS' *PRO FORMA* OPPOSITION ILLUSTRATES THE FACIAL INADEQUACY OF THEIR CLAIMS....................................................................17

     A.      Legal Malpractice (Count I) .............................................................17

     B.      Aiding and Abetting Breach of Fiduciary Duty (Count II) ...................19

     C.      Breach of Fiduciary Duty (Count III).................................................22

     D.      Unjust Enrichment (Count IV) .........................................................22

IV.     THE CLAIM OBJECTIONS ARE EITHER PROHIBITED OR LACK MERIT...........22

CONCLUSION..........................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC,*
  No. 09-cv-3639, 2010 WL 915866 (2d Cir. Mar. 16, 2010).......................................................4

*Allied Irish Banks, PLC v. Citibank, N.A.,*
  No. 03-CV-3748, 2015 WL 4104703 (S.D.N.Y. June 30, 2015) ...........................................12

*In re Allstate Insurance Co.,*
  613 N.E.2d 936 (1993)..........................................................................................................5

*In re Allvend Indus. Snacks by Toms, Inc.,*
  29 B.R. 900 (Bankr. S.D.N.Y. 1983) ....................................................................................23

*Armstrong v. McAlpin,*
  699 F.2d 79 (2d Cir. 1983)...................................................................................................20

*AroChem Int'l, Inc. v. Buirkle,*
  968 F.2d 266 (2d Cir. 1992)...................................................................................................6

*Babcock v. Jackson,*
  12 N.Y.2d 473 (1963) .............................................................................................................6

*Berman v. Morgan Keegan & Co., Inc.,*
  No. 10 Civ. 5866(PKC), 2011 WL 1002683 (S.D.N.Y. March 14, 2011) ........................21, 22

*Bernard v. Proskauer Rose, LLP,*
  87 A.D.3d 412 (1st Dep't 2011) ...........................................................................................22

*Bianco v. Erkins (In re Gaston & Snow),*
  243 F.3d 599 (2d Cir. 2001)....................................................................................................5

*Bristol-Myers Squibb Co. v. Matrix Labs. Limited,*
  No. 15–1922–cv, 2016 WL 3553442 (2d Cir. June 30, 2016)..................................................4

*Bryant v. Monaghan,*
  Case No. 15 Civ. 8427(HBP), 2018 U.S. Dist. LEXIS 130146
  (S.D.N.Y. Aug. 1, 2018) .......................................................................................................18

*Center v. Hampton Affiliates,*
  66 N.Y.2d 782 (1985) ...........................................................................................................11

*Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.,*
  No. 13C04143, 2015 WL 3863245 (Del. Super. Ct. June 10, 2015),
  *aff'd,* 134 A.3d 759 (Del. 2016)............................................................................................14

*Cobalt Multifamily Invs. I, LLC v. Shapiro,*
  857 F Supp.2d 419 (S.D.N.Y. 2012)...........................................................................6, 10, 11

*Cobble Creek Consulting, Inc. v. Sichenzia Ross Friedman Ference LLP*,
    110 A.D.3d 550 (1st Dep't 2013) ....................................................................22

*Corp. Prop. Assocs. v. Hallwood Group, Inc.*,
    817 A.2d 777 (Del. 2003) ..............................................................................14

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998)................................................................................5

*Derry Fin. N.V. v. Christiana Companies, Inc.*,
    797 F.2d 1210 (3d Cir. 1986)........................................................................15

*Eni Holdings, LLC v. KBR Grp. Holdings, LLC*,
    No. CV 8075-VCG, 2013 WL 6186326 (Del. Ch. Nov. 27, 2013) .........................17

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
    414 F.3d 325 (2d Cir. 2005)............................................................................5

*In re Food Mgmt. Grp. LLC*,
    484 B.R. 574 (S.D.N.Y. 2012)........................................................................24

*In re Food Mgmt. Grp., LLC*,
    380 B.R. 677 (Bankr. S.D.N.Y. 2008) ...........................................................13

*Gall v. Summit, Rovins & Feldesman*,
    222 A.D.2d 225, 635 N.Y.S.2d 17 (1st Dep't 1995) ............................................18

*Geier v. Mozido, LLC*,
    No. CV 10931-VCS, 2016 WL 5462437 (Del. Ch. Sept. 29, 2016)........................15

*In re Global Metallurgical*,
    312 B.R. 34 (Bankr. S.D.N.Y. 2004) ..............................................................23

*Gregor v. Rossi*,
    120 A.D.3d 447 (1st Dep't 2014) ...................................................................22

*GRT, Inc. v. Marathon GTF Tech., Ltd.*,
    No. 5571-CS, 2011 WL 2682898 (Del. Ch. July 11, 2011)...................................14

*Gupta v. Headstrong, Inc.*,
    No. 17-CV-5286(RA), 2018 WL 1634870 (S.D.N.Y. Mar. 30, 2018).....................13

*Hob Tea Room v. Miller*,
    89 A.2d 851, 856 (Del. 1952) ........................................................................13

*In re ICP Strategic Credit Income Fund Ltd.*,
    730 Fed. Appx. 78 (2d Cir. 2018)......................................................................9

*ICP Strategic Credit Income Fund, Ltd., et al. v. DLA Piper L.L.P*,
    No. 17-bk-1669, 2018 WL 1902400 (2d Cir. Apr. 23, 2018)................................3, 4

*Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*,
    413 B.R. 115 (Bankr. S.D.N.Y. 2008), *aff'd*, 2009 WL 2900247
    (S.D.N.Y. Sept. 9, 2009) ................................................................................24

*Kirschner v. KPMG LLP*,
    938 N.E.2d 941 (2010)..............................................................9, 10, 11, 12

*Kolbeck v. LIT America, Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996).........................................................20

*Levine v. Board of Educ.*,
    152 F.3d 919, 1998 WL 386141 (2d Cir. 1998) ..................................13

*LNC Invests., Inc. v. First Fidelity Bank*,
    935 F. Supp. 1333 (S.D.N.Y. 1996).........................................................6

*Lucas v. Lalime*,
    998 F. Supp. 263 (W.D.N.Y. 1998) .........................................................8

*Meserole v. Sony Corp. of Am., Inc.*,
    No. 08 Cv. 8987(RPP), 2009 WL 1403933 (S.D.N.Y. May 19, 2009) .......4

*Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*,
    2011 WL 1348438 (Del. Ch. Apr. 8, 2011) ...........................................17

*Morgan, Lewis & Bockius LLP v. IBuyDigital.com, Inc.*,
    14 Misc.3d 1224(A) (1st Dep't 2007)....................................................19

*NCP Litigation Trust v. KPMG LLP*,
    901 A.2d 871 (N.J. 2006)..........................................................................9

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ....................................................................16

*Rahl v. Bande*,
    328 B.R. 387 (S.D.N.Y. 2005)...............................................................20

*Roni LLC v. Arfa*,
    72 A.D.3d 413, 897 N.Y.S.2d 421 (1st Dep't 2010) ............................21

*Rosner v. Bank of China*,
    No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008),
    *aff'd*, 349 Fed. Appx. 637 (2d Cir. 2009) ...........................................21

*Schultz v. Boy Scouts of Amer., Inc.*,
    65 N.Y.2d 189 (1985) ...............................................................................6

*Seippel v. Jenkens & Gilchrist, P.C.*,
    341 F. Supp.2d 363 (S.D.N.Y. 2004)......................................................6

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991)..............................................10, 11, 13, 17

*Speedmark Transp., Inc. v. Mui*,
   778 F. Supp.2d 439 (S.D.N.Y. 2011) ..........................................................................4

*Symbol Techs., Inc. v. Deloitte & Touche, LLP*,
   69 A.D.3d 191 (2d Dep't 2009) ..............................................................................12

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000) ....................................................................................6

*Diversified Grp. v. Daugerdas*,
   139 F. Supp.2d 445 (S.D.N.Y. 2001) ........................................................................6

*In re Theatre Row Phase II Associates*,
   385 B.R. 511 (Bankr. S.D.N.Y. 2008) ......................................................................7

*Wall v. CSX Transp., Inc.*,
   471 F.3d 410 (2d Cir. 2006) ....................................................................................4

*Wiatt v. Winston & Strawn LLP*,
   838 F. Supp.2d 296 (D.N.J. 2012) ..........................................................................19

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000) ....................................................................................20

*Wolfson v. Moskowitz*,
   No. 08 Civ. 8796, 2009 WL 1515674
   (S.D.N.Y. May 29, 2009) ........................................................................................6

*WSP United States Corp v. Marinello*,
   No. 13 Civ. 4591 PKC, 2013 WL 6704885 (S.D.N.Y. Dec. 19, 2013) ...................13

*Xu v. Heckmann Corp.*,
   No. 4637, 2009 WL 3440004 (Del. Ch. Oct. 26, 2009) ...........................................17

**Rules / Statutes**

11 U.S.C. § 503 ...............................................................................................................23

11 U.S.C. § 506 ...............................................................................................................23

11 U.S.C. § 507 ...............................................................................................................23

22 N.Y.C.R.R. § 1200 ......................................................................................................18

Fed. R. Civ. P. 9(b) ...........................................................................................19, 20, 21

Fed. R. Civ. P. 12(b)(6) ...................................................................................................13

N.Y.R.P.C. 1.7(a)(1) ........................................................................................................18

**Other Authorities**

Black's Law Dictionary 69 (10th ed. 2014) ....................................................................15

Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog") respectfully submits this reply memorandum of law in further support of its motion [Dkt. 5-10] (the "Motion" or "Mot.") to dismiss the Complaint and Objection to Proofs of Claim and in response to the Debtors' opposition [Dkt. 14] (the "Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

The Debtors have commenced an action against Robinson Brog, a *New York* law firm, alleged to have committed wrongful acts from their law offices in *New York*, on behalf of clients (a number of which had principal places of business in *New York*), using an IOLA account also located in *New York* and governed by *New York* law, pursuant to a retention agreement that contains a *New York* choice-of-law provision.  Yet the Debtors now argue that the laws of New Jersey apply.  In making this argument, the Debtors focus significantly on allegations contained in criminal complaints filed in the District of New Jersey against Former Management (who are not even party to this action).  The allegations in those complaints are irrelevant to consideration of the allegations in the Debtors' Complaint, which involve the rendition of legal services by Robinson Brog and plainly point to the laws of New York.

It is obvious why the Debtors seek so desperately (but unsuccessfully) to distance themselves from New York law.  Based on the Debtors' own allegations, New York's *in pari delicto* doctrine and the Second Circuit's *Wagoner* rule require dismissal of this suit.  The Debtors effectively concede as much, failing to respond in any meaningful way to the arguments raised in Robinson Brog's opening brief.  When the Debtors do address Robinson Brog's arguments under New York law (*i.e.*, that New York's "adverse interest" exception does not

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

apply), they categorically ignore applicable case law and misread the allegations set forth in their own Complaint.

Moreover, contrary to the Debtors' assertions, there is nothing "incredible" about applying the plain language of the Release to the Debtors' claims.  The Release Agreement makes clear that CHT Holdco is a Releasing Party (on behalf of itself and its "**a**ffiliates") and released any and all claims related to CHT and the Merger.  The Debtors' attempt to avoid application of the Release by reading the defined term "**A**ffiliates" into the Release provision, fails under well-settled rules of contract interpretation.  Since CHT (a wholly-owned subsidiary of CHT Holdco) and its affiliated Debtors are all "affiliates" of CHT Holdco, the Release Agreement prevents the Debtors from bringing their claims.

The Debtors' responses to the substantive deficiencies of the Complaint are also without merit.  At minimum, the Debtors need to allege that Robinson Brog *negligently* provided legal services which caused them damages.  But the Debtors have not made, and cannot make, such a showing.  Fundamentally, the Debtors have failed to allege either the existence of any concrete conflict of interest[2] or that Robinson Brog was negligent in performing the services requested of it by the Debtors.  To the contrary, the Debtors allege only that Robinson Brog engaged in ordinary professional activity on behalf of the Debtors (*e.g.*, filing certificates of formation, drafting agreements, complying with instructions regarding funds held in escrow).  These allegations are plainly insufficient to state a claim based on negligence, let alone one that is based on "actual knowledge" of the Debtors' alleged fraud.  Moreover, Robinson Brog is not a "but-for" cause of the Debtors' unarticulated losses, their former agents are.  The Opposition

---

[2]    In any event, the existence of such an alleged conflict of interest would be irrelevant as The New York Rules of Professional Conduct do not provide a basis for a civil cause of action. *See*, *infra* at 16.

actually underscores this defect as the only alleged losses are to investors, not *the Debtors*.  A purported injury suffered by investors is not the Debtors' claim to bring.

For these, and for all the reasons stated below and in the Motion, the Complaint should be dismissed in its entirety with prejudice.

## THE DEBTORS' REQUESTS FOR ADDITIONAL DISCOVERY ARE NOTHING MORE THAN DELAY TACTICS

At the outset, it is important to remember that the Debtors have already received massive amounts of Rule 2004 discovery from Robinson Brog in connection with their bankruptcy cases, including production of hundreds-of-thousands of documents and a deposition of a Robinson Brog partner.  Nevertheless, the Debtors ask this Court to convert the Motion into one for summary judgment to permit even more discovery because Robinson Brog purportedly "relied upon extraneous documents."  Opp. at 12.  The Debtors' argument is nothing more than a transparent attempt to delay dismissal of this case.  To be clear, with the exception of the Release Agreement, all of the documents attached to the Rice Decl. were included to provide contextual background for this Court.  Those documents have no bearing on Robinson Brog's legal arguments:  (1) that the Debtors' claims are barred by application of the *in pari delicto* defense and Second Circuit's *Wagoner* rule; and (2) that the Complaint fails to state claims for relief—each of which independently dispose of this suit.  Further, consideration of the Release Agreement, which is integral to the Complaint given the Debtors' heavy reliance on allegations related to the Go-Private Transaction, is proper on this Motion.  *See* note 10, *infra*.

Moreover, the Debtors' contention that their choice-of-law argument is a "fact intensive" inquiry that cannot be decided at this "stage of the litigation," is baseless.  *See* Opp. at 17. Indeed, courts in this Circuit routinely resolve choice-of-law issues in ruling on motions to dismiss, including on questions related to imputation.  *See, e.g.*, *ICP Strategic Credit Income*

*Fund, Ltd., et al. v. DLA Piper L.L.P*, No. 17-bk-1669, 2018 WL 1902400, at *3-4 (2d Cir. Apr. 23, 2018) (summary order upholding choice-of-law determination made at motion to dismiss phase on question of imputation with respect to claims asserted against DLA Piper as between New York and Cayman law); *see also 2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*, No. 09-cv-3639, 2010 WL 915866, at *2-3 (2d Cir. Mar. 16, 2010); *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006). Here, as discussed below, New York law applies to the Debtors' claims based on the facts alleged in the Complaint. *See* § I. B., *infra*. Thus, it is clear that the Debtors are resistant to a choice-of-law determination only because they know that their claims should be dismissed under the well-settled laws of New York.[3] Such tactical arguments (particularly considering the amount of Rule 2004 discovery the Debtors already have in their possession) should be seen for what they are and rejected.

---

[3]     The Debtors cannot avoid a choice-of-law determination by pointing to cases that declined to engage in such an analysis for reasons that have no application here. *See* Opp. at 17-18. For example, in *Speedmark* the court found that "*the record lack[ed] facts* necessary to conduct the context-specific 'center of gravity' or 'grouping of contacts' analysis." *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (emphasis added). Here, however, the Complaint and other public filings make clear that New York law applies to the Debtors' claims. *See* § I. B., *infra*. Indeed, the Debtors have not identified any facts not already in the record that would otherwise impact this Court's analysis. Similarly, in *Meserole* the court found that the plaintiffs had "*adequately pled*" that sufficient business decisions relating to the Televisions were made at Defendant's headquarters in California" and thus a choice of law analysis was premature. *Meserole v. Sony Corp. of Am., Inc.*, No. 08 Cv. 8987(RPP), 2009 WL 1403933, at *3 n.6 (S.D.N.Y. May 19, 2009) (emphasis added). Here, the Debtors fail to plausibly plead that New Jersey law applies, but rather plead allegations that demonstrate that New York law governs. *See* § I. B., *infra*. Finally, in *Bristol-Myers Squibb Co.* the Second Circuit observed that the choice-of-law analysis would be premature because the claim at issue arose from "an agreement between [the defendant] and a third party, and about which [the plaintiff had] only limited information." *Bristol-Myers Squibb Co. v. Matrix Labs. Limited*, No. 15–1922–cv, 2016 WL 3553442, at *3 (2d Cir. June 30, 2016). The Debtors' information is in no way restricted in this case. They have hundreds-of-thousands of documents at their disposal from Rule 2004 discovery. Even with all this discovery, the Debtors still fail to present facts that would support a finding that New Jersey law applies.

## ARGUMENT

### I.    THIS ACTION IS BARRED BY *WAGONER* AND *IN PARI DELICTO*

As Robinson Brog demonstrated in its opening brief, the Debtors participated in and benefited from the predicate offenses that they allege against Robinson Brog. Mot. at 8-10, 15-17. Given the Debtors' indisputable involvement, this action is plainly barred by application of the *Wagoner* rule and *in pari delicto* defense. *See id.* at 11-15. Effectively conceding that New York law requires dismissal of this case, the Debtors argue that New Jersey law governs their claims and the question of imputation. Opp. at 12-15. Alternatively, the Debtors argue that the narrow adverse interest exception applies. *Id.* at 18-19. The Debtors' arguments are contradictory and misstated. New York law applies (without exception), and the Complaint should be dismissed.

#### A.    Choice-Of-Law Standard

In making choice-of-law determinations, federal courts apply the conflict-of-laws rules of the forum state in which they sit in the absence of federal policy concerns. *See Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 601-02 (2d Cir. 2001). Pursuant to New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Insurance Co.*, 613 N.E.2d 936, 937 (1993). An actual conflict exists when a difference in the "substantive" law of each jurisdiction is relevant to, and has "a significant possible effect" on, the outcome of the law suit. *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005). If a conflict in the relevant laws exists, then the court must conduct a choice-of-law analysis. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). Courts have recognized a conflict in the law of New York and New Jersey for claims made against New York attorneys in determining

the application of the adverse interest exception to the *in pari delicto* defense.  *Cobalt Multifamily Invs. I, LLC v. Shapiro*, 857 F Supp. 2d 419, 431 (S.D.N.Y. 2012).

To determine choice of law, New York employs an "interest analysis," which "give[s] controlling effect to the law of the jurisdiction which, because of its relation or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963) (cited in Opp. at 14).  In tort cases, the most "'significant contacts are, almost exclusively, the parties' domiciles and the locus of the [alleged] tort.'"  *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (quoting *Schultz v. Boy Scouts of Amer., Inc.*, 65 N.Y.2d 189, 197 (1985)); *Cobalt*, 857 F Supp.2d at 430-431.  With respect to a claim for legal malpractice, "a state has a strong interest in regulating the conduct of a law firm [or lawyer] licensed to practice within its borders."  *LNC Invests., Inc. v. First Fidelity Bank*, 935 F. Supp. 1333, 1350–51 (S.D.N.Y. 1996); *see also Wolfson v. Moskowitz*, 08 Civ. 8796, 2009 WL 1515674, at *2, *4-5 (S.D.N.Y. May 29, 2009) ("In a legal malpractice case, New York's interest is predominant when the attorney being sued is licensed in New York . . . .") (citing cases); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp.2d 363, 380 (S.D.N.Y. 2004) ("New York's interest in regulating the conduct of its attorneys gives it the predominant interest in this matter" for rescission of an excessive fee arrangement.); *Diversified Grp. v. Daugerdas*, 139 F. Supp. 2d 445, 453 (S.D.N.Y. 2001) (recognizing that "[a] state has a paramount interest in regulating the conduct of attorneys").  Finally, when a contract contains a choice-of-law provision, New York applies the law of the state agreed to by the parties.  *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000).

### B.    New York Law Applies To The Claims At Issue

The Debtors fail to cite to any fact-specific allegations in the Complaint to support their argument that New Jersey law governs their claims against Robinson Brog.  Instead, the Debtors

base their choice-of-law analysis on two misleading assertions: *first*, that prior to bankruptcy the Debtors' "principal place of business was in New Jersey"; and *second*, that Former Management's "underlying schemes" allegedly occurred in New Jersey. *See* Opp. at 12-13. Neither assertion (even if taken as true) supports a finding that New Jersey law applies to the claims at issue here.

As an initial matter, the Debtors' conclusory allegation that the Debtors' "principal place of business was in New Jersey" is directly contradicted by the bankruptcy petitions that the Debtors filed with this Court.[4] *See In re Theatre Row Phase II Associates*, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (observing that bankruptcy courts "can take judicial notice of all of the documents filed in [a Chapter 11] case"). Four of the Debtors, including Orion HealthCorp, Inc. had their principal places of business in the state of New York.[5] *See* Orion HealthCorp, Inc. [Dkt. 1 in Case No. 18-71748]; Physicians Practice Plus, LLC [Dkt. 1 in Case No. 18-71753]; New York Network Management, L.L.C. [Dkt. 1 in Case No. 18-74545]; Allegiance Billing & Consulting, LLC [Dkt. 1 in Case No. 18-71767]. Indeed, the Debtors' presence in this state appears to have served as the impetus for the Debtors' decision to file their bankruptcy petitions in the Eastern District of New York.

---

[4]    The Debtors' position on this score is also inconsistent with arguments contained in other pleadings that the Debtors have filed with this Court. *See, e.g.*, Debtors' Turnover Motion filed against Robinson Brog [Dkt. 18 in Case No. 18-71748] at 15-19 (arguing that Robinson Brog breached ethical obligations owing to the Debtors under New York law); Debtors' Response In Opposition To Robinson Brog's Motion to Quash Subpoena [Dkt. 270 in Case No. 18-71748] at 3, 11 (same); *see also* Debtors' Opposition To Pavandeep Bakhshi's Motion To Dismiss Amended Complaint [Dkt. 112 in Case No. 18-08053] at 15-21 (arguing that *in pari delicto* and *Wagoner* do not apply under New York law to claims filed against a foreign-based resident in connection with the Go-Private Transaction).

[5]    Seven other Debtors are listed as having their principal places of business in states other than New Jersey. *See* NEMS West Virginia, LLC (West Virginia) [Dkt. 1 in Case No. 18-71752]; Northeast Medical Solutions, LLC (Pennsylvania) [Dkt. 1 in Case No. 18-71751]; Rand Medical Billing, Inc. (California) [Dkt. 1 in Case No. 18-71756]; Western Skies Practice Management, Inc. (Colorado) [Dkt. 1 in Case No. 18-71758]; Medical Billing Services, Inc. (Texas) [Dkt. 1 in Case No. 18-71755]; RMI Physician Services Corporation (Texas) [Dkt. 1 in Case No. 18-71755]; Integrated Physician Solutions, Inc. (Georgia) [Dkt. 1 in Case No. 18-71759].

Moreover, allegations contained in *other* complaints filed by the United States Department of Justice and the Securities and Exchange Commission in the District of New Jersey against non-parties Parmar, Zaharis, and Chivukula have nothing to do with the choice-of-law analysis in *this* case involving claims against New York attorneys providing legal services to predominately New York companies from their offices in New York. Opp. at 12-13 (citing *United States v. Parmjit Parmar, et al.*, No. 18-8040 (D.N.J May 15, 2018); *United States v. 50 Riverside Boulevard, Unit 21B New York, New, York, et al.*, No. 2:18-cv-09293 (D.N.J. May 16, 2018); *U.S. Securities and Exchange Commission v. Parmjit Parmar, et al.*, No. 2:18-cv-09284 (D.N.J. May 16, 2018)). Those allegations on their face concern claims filed against Former Management, who "reside in the District of New Jersey" and are alleged to have "knowingly and intentionally conspired and agreed with each other" in New Jersey and committed "acts and omissions" in New Jersey. *See* Opp. at 12-13. Whether those federal agencies have properly alleged venue in the District of New Jersey with respect to their claims against Former Management is irrelevant to claims asserted by the Debtors against Robinson Brog.

Finally, the Debtors' contention that New Jersey law applies is contrary to the factual admissions contained in the Complaint (filed in this New York Court). As alleged by the Debtors, Robinson Brog is a New York-based law firm with its only office in New York, which conducted all work related to the Debtors from its law offices in New York. *See* Compl. ¶ 8. The two individual attorneys named in the Complaint are licensed to practice law in New York; not New Jersey. *Id.* ¶¶ 9-10. Robinson Brog's IOLA account is located in New York and governed by New York Judiciary Law. *Id.* ¶ 87 (discussing New York law); *see also Lucas v. Lalime*, 998 F. Supp. 263, 267-268 (W.D.N.Y. 1998) (applying New York law to claim for malpractice against attorney who resided in and was licensed to practice law in New York and

which was the situs of his attorney trust account). The Debtors allege that Robinson Brog assisted Former Management in acquiring three apartments, all of which are located in New York City (only one property discussed in the Complaint is located in New Jersey). Compl. ¶¶ 100, 122. And the engagement letter, which is signed by Paul Parmar on behalf of himself and his companies, contains a choice-of-law provision stating that Robinson Brog's engagement shall be "governed by the laws of the State of New York."[6] *See* Supplemental Declaration of Marian C. Rice, Ex. "M,"[7] filed concurrently herewith; *see also* Debtors' Opposition to Robinson Brog's ESI Proof of Claim [Dkt. 499 in Case No. 18-71748] at Ex. B.

The foregoing facts (all but one of which are alleged in the Complaint) establish conclusively that New York law applies because it is indisputable that the locus of the tort is New York and Robinson Brog is domiciled in New York. *See In re ICP Strategic Credit Income Fund Ltd.*, 730 Fed. Appx. 78, 82 (2d Cir. 2018) (upholding lower courts' application of "New York law to DLA [Piper]'s *in pari delicto* defense" on motion to dismiss where the liquidators for Cayman-based funds brought "a claim of aiding and abetting breach of fiduciary duty under New York law against DLA [Piper], a New York-based law firm, which conducted all its work related to this issue from New York"). And because New York law governs, the Debtors' cases are inapposite. *See, e.g.*, *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 952-53 (2010) (expressly declining to "create exceptions to imputation along the lines adopted by the court[ ] in [*NCP Litigation Trust v. KPMG LLP*, 901 A.2d 871, 882 (N.J. 2006)]") (cited in Opp. at 14-17).

---

[6]     Further, although not relevant, the private investment firm, C.C. Capital, LLC, which is the investor alleged to have been defrauded "out of hundreds of millions of dollars" in connection with the Go-Private Transaction (Opp. at 5), is operated and managed from the state of New York. *See* https://cc.capital/contact-us. Thus, the purported injury to that investor also occurred in this state.

[7]     The engagement letter contains a minor typographical error. Consistent with the remainder of the document, the first page should be dated "May 9, 2013"—not "May 9, 2012."

Indeed, regardless of where other parties are domiciled or where the underlying events occurred, courts in this District have made clear that New York has a predominant interest in regulating New York attorneys. For example, in *Cobalt,* the court-appointed receiver for Cobalt Multifamily Investors I, LLC ("Cobalt") filed suit against three sets of Cobalt's attorneys who provided professional services to Cobalt before it collapsed under the weight of a Ponzi scheme. *Cobalt*, 857 F. Supp. 2d at 423. Cobalt was comprised of entities organized under Delaware law and maintained their principal place of business in Massachusetts. *Id.* at 432. The three respective law firms were domiciled in New York, New Jersey and Connecticut (collectively the "Law Firm Defendants").

The Law Firm Defendants filed motions to dismiss under *Wagoner*, arguing that the receiver lacked standing to file suit against them based upon the complicity of Cobalt's managers. *Id.* at 425. On a motion for reconsideration (following the New York Court of Appeal's decision in *Kirschner*), the court observed that a state has the strongest interest in regulating the conduct of attorneys licensed to practice law in its jurisdiction. *Id.* at 431. Therefore, notwithstanding Cobalt's Delaware and Massachusetts domiciles, the court found that the law of the Law Firm Defendants' respective domiciles applied (*i.e.*, New York, New Jersey and Connecticut), and dismissed claims asserted by the receiver against Cobalt's New York attorneys under *Wagoner*. *Id.* at 432-434.

The court's decision in *Cobalt* is on all fours with the facts at issue here. Robinson Brog is a New York law firm domiciled in New York, which performed its legal services for the Debtors in New York. As such, New York law governs the claims asserted in the Complaint and this case should be dismissed under the well-established *Wagoner* rule.

### C.    The Debtors Fail To Allege That The Adverse Interest Exception Applies

As previously explained, the Debtors' allegations establish that the "adverse interest" exception does not apply. Mot. at 15-17. The "adverse interest" exception is the "most narrow of exceptions" and applies only where the alleged wrongdoer "*totally* abandoned" the interests of his principal and is acting "entirely for his own or another's purposes." *Kirschner*, 938 N.E.2d at 952-53 (quoting *Center v. Hampton Affiliates*, 66 N.Y.2d 782, 784-85 (1985)) (emphasis in original). If the agent is acting "both for himself and for the principal," the exception does not apply. *Id.* at 952. Accordingly, "if a corporation receives *any* benefit from the [misconduct], the adverse interest exception will not apply, even if the [misconduct] ultimately causes the corporation to suffer harm in the long term, and even where the insider intended to benefit himself at the corporation's expense." *Cobalt*, 857 F. Supp. 2d at 428 (emphasis in original).

Although the Debtors argue without substantiation that "Former Management 'totally abandoned the Debtors' interests' and acted entirely for their own benefit" (Opp. at 18 (quoting Compl. ¶¶ 28, 30)), they fail to address the countless allegations set forth in the Complaint that demonstrate otherwise. *See, e.g.*, Mot. at 16-17 (citing Compl. ¶¶ 27-35, 37, 39-41, 57, 78-86 (alleging that Former Management orchestrated a complex scheme to overvalue CHT so that investors would pay a premium in connection with the Go-Private Transaction; that CHT benefited from the Go-Private Transaction by obtaining financing from CC Capital; that CHT continued to operate for over a year after the Go-Private Transaction was consummated; that the Debtors survived for six months even after Parmar resigned as CEO)). Nor do the Debtors even attempt to distinguish the plethora of cases cited in the Motion, all of which demonstrate that the "adverse interest" exception has no application in this case. *See id.* at 15-16.

In determining when the "adverse interest" exception is triggered, "[t]he crucial distinction is between conduct that defrauds the corporation and conduct that defrauds others for

the corporation's benefit." *Kirschner*, 938 N.E.2d at 954. The scheme alleged in the Complaint makes clear that it was the investors in the Debtors, not the Debtors themselves, who were the intended victims of Former Management's fraud.[8]   Compl. ¶ 27 (alleging that Former Management "orchestrated a widespread scheme *to defraud investors and others* out of hundreds of millions of dollars") (emphasis added); *see also* Opp. at 6 (Former Management falsified and fabricated records, generated fake income streams and phony customers, and "made material misrepresentations and omissions *to private investment firms.*") (emphasis added); *id.* ("[A]ctions by Former Management caused a private investment firm, C.C. Capital, LLC, to value CHT at more than $300 million for purposes of financing the Go-Private Transaction.").[9]

Since the allegations in the Complaint indisputably demonstrate that the fraud alleged was "conduct that defrauds others for the corporation's benefit" and, therefore, the Debtors benefited from Former Management's alleged fraud, the adverse interest exception cannot apply.

## II.    THE RELEASE ALSO REQUIRES DISMISSAL OF THIS SUIT

The Debtors argue that the Release does not bar the Debtors' claims because the Debtors are not a Releasing Party under the Release Agreement. Opp. at 19-21. As fallback, the Debtors

---

[8]    The only two cases cited by the Debtors reinforce that to trigger the adverse interest exception the alleged fraud must have been directed at the company, as opposed to use of the company to defraud outsiders. *See Allied Irish Banks, PLC v. Citibank, N.A.*, No. 03-CV-3748, 2015 WL 4104703, at *8 (S.D.N.Y. June 30, 2015) (differentiating *Kirschner* and observing that "this is not the classic case of a corporate officer falsely portraying financial health to third party investors or shareholders"); *Symbol Techs., Inc. v. Deloitte & Touche, LLP*, 69 A.D.3d 191, 198 (2d Dep't 2009) (observing that the adverse-interest exception "has been defined very narrowly in New York," and applies only when a "fraud was entirely self-interested and ... the corporation did not benefit in any way").

[9]    Indeed, the Debtors' continued focus on their "defraud[ed] investors" only highlights why their claims are barred. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("It is well settled that a [debtor-in-possession] has no standing generally to sue third parties on behalf of the estate's creditors.").

contend that the Release Agreement is ambiguous. *Id.* at 21-22. However, there is nothing unclear about the Release; its broad language prevents the Debtors from bringing their claims.[10]

## A. The Debtors Are Included In The Definition Of Releasing Party

"Under Delaware law,[11] which is more contractarian than that of many other states, parties' contractual choices are respected ...." *See GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2011 WL 2682898, at \*12 (Del. Ch. July 11, 2011). Further, it is well-settled Delaware law that a general release "is intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind...." *Corp. Prop. Assocs. v. Hallwood Group, Inc.*, 817 A.2d 777, 779 (Del. 2003). Thus, a general release acts as a release of "all matters touching the contract." *Id.* (citing *Hob Tea Room v. Miller*, 89 A.2d 851, 854, 856 (Del. 1952)).

The Debtors seek to avoid the contractual Release by arguing that Debtor CHT is not a "Releasing Party" because it is not an "affiliate" of a Stockholder. Opp. at 20. In support, the Debtors look to the definition of "Affiliates" in the Merger Agreement, which defines the

---

[10]    The Debtors attempt to make an issue of the fact that Robinson Brog relies on the Release Agreement to establish that the Release bars the Debtors' claims. This argument is baseless. Although the Release is not specifically mentioned in the Complaint, the Release Agreement was executed pursuant to the Go-Private Transaction, which is discussed at great length. *See, e.g.,* Compl. ¶¶ 33-34, 78-86, 93-95, 100-01. It is therefore proper for this Court to consider the Release Agreement (which is "integral" to the Debtors' claims) in connection with this Motion. *See* Mot. at 3 n.2 ("[T]he Court may consider documents "integral" to the complaint which are not incorporated by reference.") (citing *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 690 (Bankr. S.D.N.Y. 2008)); *see also Levine v. Board of Educ.*, No. 97-9035, 1998 WL 386141, at \*2 (2d Cir. 1998) (general release was properly considered by the District Court in dismissing plaintiff's complaint); *Gupta v. Headstrong, Inc.*, No. 17-CV-5286 (RA), 2018 WL 1634870 (S.D.N.Y. Mar. 30, 2018) (holding that "[i]t is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous"); *WSP USA Corp. v. Marinello*, No. 13 Civ. 4591 PKC, 2013 WL 6704885, at \*3 (S.D.N.Y. Dec. 19, 2013) ("Affirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6)").

[11]    The Debtors again take issue with Robinson Brog's use of New York law, arguing that the "Release Agreement contains a Delaware choice-of-law provision." Opp. at 21 n.9. However, the Debtors do not allege that there is a conflict between the cases relied on in Robinson Brog's opening brief and Delaware law, or otherwise respond to them. Nonetheless, except where noted, Robinson Brog cites to Delaware law in this section.

*capitalized* term "Affiliates" and provides that Debtor CHT shall not be "deemed to be an Affiliate" of CHT Holdco. *Id.* at 20-21 (citing Rice Decl. Ex. K). This argument is without merit.

The Release clause in the Release Agreement uses the lowercase term "affiliates," *not* the defined term "Affiliates." *Compare* Rice Decl. Ex. I, p. 2, *with id.* Ex. K, p. 1. Plainly the definition of "Affiliate" in the Merger Agreement does not control; rather, the term "affiliates" should be afforded its ordinary meaning pursuant to basic tenants of contract interpretation. *See Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*, No. 13C04143, 2015 WL 3863245, at *4-5 (Del. Super. Ct. June 10, 2015), *aff'd*, 134 A.3d 759 (Del. 2016) (rejecting argument that a section of an agreement incorporated the defined term "Filing Date"; holding that "[t]he Court cannot ignore that the plain language of the Engineering Clause does not include the capitalized term 'Filing Date'"); *see also Derry Fin. N.V. v. Christiana Companies, Inc.*, 797 F.2d 1210, 1214 (3d Cir. 1986) (discussing the meaning of the lower case term "default" and the capitalized term "Event of Default" under New York law; observing that "[c]learly in this provision the parties intended for the word default, which is written in lower case letters as it is in the exculpatory clause, to have its ordinary, plain meaning").

As Robinson Brog previously explained, Black's Law Dictionary broadly defines the term "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Mot. at 18 n.11 (citing Black's Law Dictionary 69 (10th ed. 2014)). Moreover, the Delaware Chancery Court has already addressed the definition of "affiliate" in the context of release agreements, observing: "Since one can discern on the face of the General Release that its purpose is to effect a broad release of claims, intended to cover any preexisting claims the releasors may have against the

releasees, it is appropriate to interpret the term "affiliate," as used in the General Release, broadly as well." *Geier v. Mozido,* LLC, No. CV 10931-VCS, 2016 WL 5462437, at *6 (Del. Ch. Sept. 29, 2016). The court went on to find, that "in determining the meaning of 'affiliate,' standard dictionary definitions are instructive," and that the term includes "'an affiliated person or organization,' 'being close in connection, allied, associated, or attached as a member or branch,' or '[s]omeone who controls, is controlled by, or under common control with an issuer of a security.'" *Id.*

The Release at issue here was executed by CHT Holdco as a "Releasing Party" and was intended to be broad in all respects. It covers "any and all . . . claims, counterclaims, suits, causes of action [and] damages . . . of every kind and nature whatsoever, whether arising from any express, implied, oral or written contract or agreement or otherwise, known or unknown, past, present or future . . . with respect to [Debtor CHT] . . . or the Merger." Rice Decl. Ex. K, p. 20. Clearly the term affiliate (for which the parties specifically chose to use the lowercase term rather than the Merger Agreement's definition), was meant to be interpreted broadly as well. Under the Merger Agreement, Debtor CHT became a wholly-owned subsidiary of CHT Holdco, making Debtor CHT (and each of its affiliated Debtors) affiliates of CHT Holdco. Opp. at 6. The Debtors are thereby Releasing Parties and their claims are barred.

The Debtors again attempt to limit the scope of the Release Agreement, arguing that the Release does not cover conduct that occurred "well before and after the Go-Private Transaction." Opp. at 3. However, the Release unambiguously extends far beyond the Go-Private Transaction and covers any claim "past, present or future . . . with respect to [Debtor CHT] . . . or the Merger." Rice Decl. Ex. K, p. 4. The Debtors concede that "the sham transactions" (which in the Debtors' words are the "focal point of the Complaint") "pre-dated the Go-Private

Transaction." Opp. at 11. Because the Release extends to any claims related to Debtor CHT or the Go-Private Transaction "occurring at any time at *or prior to* the Closing" (Rice Decl. Ex. K, p. 4) (emphasis added), the Release covers the alleged "sham transactions," too.[12]

### B.    The Release Is Not Ambiguous

Equally unavailing is the Debtors' argument that the Release is ambiguous and therefore cannot be decided on a motion to dismiss. Opp. at 21. The Release is unambiguous and should be enforced as written. *See Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, No. CV 8075-VCG, 2013 WL 6186326, at *6 (Del. Ch. Nov. 27, 2013) (When a contract is clear and unambiguous on its face, a court "must give full effect to its meaning."); *Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*, 2011 WL 1348438, at *8 (Del. Ch. Apr. 8, 2011) ("If the contractual language at issue is 'clear and unambiguous,' the ordinary meaning of the language generally will establish the parties' intent.").

The Debtors seem to suggest that it would be unfair to interpret the Release Agreement as providing for "a release for [Parmar] and others from the Stockholders in the Go-Private Transaction." Opp.at 21. But that is precisely what the unambiguous language of the Release Agreement says.[13] The Debtors cannot rewrite the Release simply because they don't like it. *See Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) ("[W]e must ... not rewrite the contract

---

[12]    Although the Debtors allege that Robinson Brog improperly wired funds from its IOLA account to various non-Debtor entities after the signing of the Release, including one transfer to Ranga Bhoomi after Parmar resigned as CEO in October 2017, *see* Compl. ¶¶ 94-99, these allegations are insufficient to state a claim for relief. The Complaint does not allege any facts to demonstrate that transfers out of Robinson Brog's IOLA account were unauthorized or otherwise in a violation of the duties that Robinson Brog owed to the Debtors at the time.

[13]    The single case cited by the Debtors is distinguishable. *See* Opp. at 22 (citing *Xu v. Heckmann Corp.*, No. 4637, 2009 WL 3440004 (Del. Ch. Oct. 26, 2009)). That case involved a release between "a sitting director from claims the corporation might have against him." *Id.* at *6. It did not involve a release with respect to third-party beneficiaries (who themselves are not alleged to have had knowledge of any fraud), as is the case here.

to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both.").

## III.    THE DEBTORS' *PRO FORMA* OPPOSITION ILLUSTRATES THE FACIAL INADEQUACY OF THEIR CLAIMS

Even if the Debtors' claims were not barred by New York's *in pari delicto* doctrine (they are) and the Second Circuit's *Wagoner* rule (they are) and the Release (they are), the Debtors fail to assert claims on which relief may be granted.

### A.    Legal Malpractice (Count I)

The Debtors allege that Robinson Brog breached a duty owed to them by "serving as counsel to the Debtors and Parmar without a waiver and in conscious disregard of th[at] fundamental conflict of interest."  Opp. at 23 (citing Compl. ¶¶ 45–46).  However, the Debtors fail to allege the existence of any concrete conflict for which a waiver would be required.  *See e.g.*, Compl. ¶ 45 (alleging that Robinson Brog acted for the Debtors as outside counsel while also acting on behalf of Parmar in "myriad litigation and corporate matters" but failing to allege how such representations resulted in a fundamental conflict of interest requiring a waiver).  Such bare allegations, without more, are insufficient to support a claim for legal malpractice.  *Cf.* N.Y. Rules of Professional Conduct, Rule 1.7(a)(1) (providing that a lawyer may represent a client "if a reasonable lawyer would conclude that . . . the representation will [not] involve the lawyer in representing differing interests").  Further, even assuming that such a conflict exists, such violation does not, in and of itself, amount to malpractice.  *Bryant v. Monaghan*, Case No. 15 Civ. 8427 (PAC)(HBP), 2018 U.S. Dist. LEXIS 130146, at *13 (S.D.N.Y. Aug. 1, 2018). Additionally, the New York Rules of Professional Conduct simply do not provide a basis for a civil cause of action.  N.Y. Rules of Professional Conduct 22 N.Y.C.R.R. § 1200, Preamble, Comment [12] ("The Rules are designed to provide guidance to lawyers and to provide a

structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability."). The Debtors' remaining allegations are similarly inadequate as a result of the Debtors' failure to allege that Robinson Brog *negligently* performed the legal services requested of it by the Debtors (*e.g.*, filing certificates of formation, drafting agreements, complying with instructions regarding funds held in escrow).

Additionally, other than describing the legal standard and citing to a single conclusory allegation within the Complaint, the Opposition fails to meaningfully address how the purported negligence of Robinson Brog was the proximate cause of any losses suffered by the Debtors. *See* Opp. at 24–25. This is unsurprising given the facial deficiency of the Complaint. Reading between the lines, it appears that the Debtors' entire theory of loss emanates from the consummation of the Go-Private Transaction. Opp. at 25 (citing Compl. ¶ 3 (alleging that "but for Defendants' substantial assistance, Former Management's fraudulent scheme would never have come into fruition")). However, beyond this conclusory allegation, the Debtors have failed to allege any facts suggesting that "but for" the actions of Robinson Brog, the Go-Private Transaction would not have been consummated. Such a failure is fatal to the Debtors' claim. *See Morgan, Lewis & Bockius LLP v. IBuyDigital.com, Inc.*, 14 Misc.3d 1224(A), at *6 (1st Dep't 2007) (dismissing counterclaim for legal malpractice where counterclaimant's theory of loss was the unsuccessful consummation of a planned IPO as a result of a law firm's negligence in handling the matter but where counterclaimant "utterly failed to set forth any facts that would support an inference that but for [the law firm's] alleged negligence, [the counterclaimant's] IPO would likely have succeeded"); s*ee also Gall v. Summit, Rovins & Feldesman*, 222 A.D.2d 225, 635 N.Y.S.2d 17 (1st Dep't 1995) (cause of action for legal malpractice failed to state a claim because the complaint was "devoid of *factual allegations* which sufficiently demonstrate a causal

relationship between purported conduct on the part of [the] defendants and damages suffered by [the] plaintiff") (emphasis added). The cases upon which the Debtors rely do not hold otherwise. *See, e.g.*, *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 312 (D.N.J. 2012) (referring to "the *substantial number of red flags* alleged in Plaintiffs' Amended Complaint") (emphasis added).

### B.    Aiding and Abetting Breach of Fiduciary Duty (Count II)

The Debtors mischaracterize the pleading standard applicable to a claim for aiding and abetting breach of fiduciary duty by arguing that "Rule 9(b)'s heightened pleading standard is applicable to breach of fiduciary duty only when the breach is premised on a *defendant's* fraudulent conduct." Opp. at 25 (emphasis in original). To the contrary, Rule 9(b)'s heightened pleading standard applies to aiding and abetting breach of fiduciary duty claims when the underlying *primary violation* was premised on fraud. *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996) (applying Rule 9(b) to aiding and abetting breach of fiduciary duty claim because the underlying primary violation was based on fraud); *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (applying Rule 9(b) to aiding and abetting fraud claims); *Armstrong v. McAlpin*, 699 F.2d 79, 92–93 (2d Cir. 1983) (applying New York law to an aiding and abetting fraud claim and explaining that "plaintiffs . . . have failed to allege actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)").

Here, it is beyond peradventure that the underlying violations of Former Management are based on fraud. *See, e.g.*, Compl. ¶ 2 (referring to "a large, complex, and brazen *fraudulent* scheme" perpetrated by Former Management) (emphasis added); *id.* ¶ 7 (referring to "*fraudulent* schemes") (emphasis added); *id.* at 8 ("The Fraudulent Schemes"); *id.* ¶ 27 (referring to "a widespread scheme to *defraud* investors") (emphasis added); *id.* ¶¶ 28, 29, 36, 44. Further,

Former Management is alleged to have falsified and fabricated bank records, generated fake income streams and phony customers, and made material misrepresentations and omissions to third parties. Compl. ¶¶ 32, 79. When presented with similar allegations, courts have held that the heightened pleading standard of Rule 9(b) applies. *See Rahl v. Bande*, 328 B.R. 387, 413–14 (S.D.N.Y. 2005) ("By alleging issuing false financial statements, the . . . defendants were attempting 'to induce action or inaction on the part of the investors by means of falsehoods or material omissions;' thus, [the breach of fiduciary duty claim] is premised on fraudulent conduct on the part of the . . . defendants. Accordingly, the heightened pleading standard of Rule 9(b) is triggered . . . ."). Therefore, the Debtors' allegations must withstand the heightened scrutiny of Rule 9(b)—which they do not.

Regardless, the allegations of the Debtors are deficient under any applicable pleading standard as, in the first instance, the Debtors have failed to properly allege that Robinson Brog had "actual knowledge" of Former Management's alleged misconduct. *See* Mot. at 24 (discussing *Roni LLC v. Arfa*, 72 A.D.3d 413, 414, 897 N.Y.S.2d 421 (1st Dep't 2010)). The sole allegation even suggesting that Robinson Brog knew about Former Management's alleged breaches of fiduciary duty is patently conclusory. *See* Compl. ¶ 144 ("Robinson Brog nevertheless provided substantial assistance to Former Management in breaching their fiduciary duties to the Debtor by . . . failing to act when it knew that Former Management was breaching their fiduciary duties owed to the Debtors."). Further, the Debtors' reference to "very specific facts" purportedly creating a substantial inference of Robinson Brog's actual knowledge, *see* Opp. at 27, is merely an attempt to elevate allegations that would potentially demonstrate constructive knowledge to allegations sufficient to show actual knowledge. Such attempt necessarily fails. *See Berman v. Morgan Keegan & Co., Inc.*, No. 10 Civ. 5866(PKC), 2011 WL

1002683, at *10 (S.D.N.Y. March 14, 2011) ("Mere 'allegations of constructive knowledge or recklessness are insufficient' to satisfy the knowledge requirement."). Courts presented with similar anemic factual allegations have held that such allegations do not give rise to the strong inference necessary to allege that a defendant had actual knowledge of the underlying breach of duty. *See Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 Fed. Appx. 637 (2d Cir. 2009) (collecting cases where presence of "red flags" did not give rise to a finding of strong inference of actual knowledge of fraud and declining to conclude that actual knowledge was adequately alleged where the facts indicated at most constructive knowledge of the underlying fraud); *see also Berman v. Morgan Keegan & Co., Inc.*, No. 10 Civ. 5866(PKC), 2011 WL 1002683, at *9 (S.D.N.Y. March 14, 2011) (holding that, "[s]tripped of conclusory language, plaintiffs' allegation that [defendant] had knowledge of [third party's] fraudulent conduct are based upon conjecture and surmise").

Similarly, the Debtors have failed to properly allege that Robinson Brog rendered substantial assistance to Former Management. The Debtors argue that Robinson Brog had a "critical role in Former Management's fraudulent schemes and breaches of fiduciary duties," *see* Opp. at 28, but relies upon allegations that Robinson Brog filed certificates of formation, drafted applicable agreements, and complied with instructions regarding funds held in escrow to supporting its sweeping assertion. However, such allegations are insufficient as a matter of law, *see Gregor v. Rossi*, 120 A.D.3d 447, 449 (1st Dep't 2014) ("The allegations that the attorney prepared merger documents and a shareholder agreement are allegations of ordinary professional activity, not substantial assistance."), and the Debtors fail to concretely explain how "this . . . flies in the face of the record that confirms the Defendants' critical  role in Former Management's fraudulent schemes and breaches of fiduciary duties." Opp. at 25.

### C.    Breach of Fiduciary Duty (Count III)

The Debtors' breach of fiduciary duty claim is duplicative of their claim for legal malpractice and, accordingly, should be dismissed. *Cobble Creek Consulting, Inc. v. Sichenzia Ross Friedman Ference LLP*, 110 A.D.3d 550, 551 (1st Dep't 2013) (affirming dismissal of "breach of fiduciary duty claim as duplicative, because it was based on the same facts and alleged the same damages as the legal malpractice claim"); *Bernard v. Proskauer Rose, LLP*, 87 A.D.3d 412, 416 (1st Dep't 2011) (same). Further, the Debtors' breach of fiduciary duty claim is deficient for the same reasons that require dismissal of their claim for legal malpractice; namely, a failure to adequately allege the existence of any disabling conflict for which a waiver would be required and a failure to plead that any purported breach of fiduciary duty was the "but for" cause of any damages purportedly suffered by the Debtors. *See supra* Part III.A. Accordingly, the Debtors' breach of fiduciary duty claim must be dismissed.

### D.    Unjust Enrichment (Count IV)

The Debtors offer no response to Robinson Brog's unjust enrichment arguments. Instead, the Debtors repeat their unsupported assertion that: "upon information and belief all legal fees for Robinson Brog's representation of Former Management were paid from proceeds of the Debtors."[14]  Opp. at 30. This allegation is insufficient for all those reasons stated in Robinson Brog's opening brief. Mot. at 26-27. This claim should be dismissed.

## IV.    THE CLAIM OBJECTIONS ARE EITHER PROHIBITED OR LACK MERIT

The Debtors are seeking an impermissible second bite at the apple by arguing that the claims filed by Robinson Brog are neither entitled to priority treatment under sections 503 and

---

[14]    The Debtors appear to suggest that Robinson Brog was improperly enriched because it allegedly received $4.3 million in legal fees from the Debtors over a four-*year* period. By comparison, DLA Piper's First Interim Fee Application seeks over $3.4 million from the Debtors for a four-*month* period. *See* Dkt. 523 in Case No. 18-71718 at 2. Thus, it can hardly be alleged that Robinson Brog received a "handsome reward" in fees for the work it performed for the Debtors. *See* Opp. at 28.

507 of the Bankruptcy Code nor entitled to secured treatment under section 506 of the Bankruptcy Code. The Turnover Order explicitly grants Robinson Brog "an administrative claim with the same priority as administrative claims allowed pursuant to Sections 503(b)(1)(A), 507(a)(2)." Turnover Order at 3 (¶ 1). The Debtors cannot now attempt to relitigate this settled issue—it has been fully adjudicated and has been ensconced in a final order of the Bankruptcy Court. *See In re Global Metallurgical*, 312 B.R. 34, 41 (Bankr. S.D.N.Y. 2004) (holding that debtors were collaterally estopped from challenging the administrative status of a claim previously established in a prior court order); *In re Allvend Indus. Snacks by Toms, Inc.*, 29 B.R. 900, 903 (Bankr. S.D.N.Y. 1983) (barring relitigation of the allowance of an administrative claim as agreed to within a prior stipulation among the parties). Accordingly, the Debtors are barred from contesting the administrative priority of the claims filed by Robinson Brog.[15]

The Debtors next complain that "[t]he claims filed by Robinson Brog are devoid of the necessary detail as required by the Turnover Order." Opp. at 31. However, the claims filed by Robinson Brog have complete documentation by way of bills for the services rendered which support the claims. The Debtors fail to articulate what additional detail is lacking that would warrant disallowance of those claims. Further, the Debtors argue that "a claim objection is not the proper subject of a motion to dismiss." Opp. at 31 n.12. However, that elevates form over substance, and the objections of the Debtors are ripe for adjudication. *See In re Food Mgmt. Grp. LLC*, 484 B.R. 574, 582–83 (S.D.N.Y. 2012) ("[W]here the rights of the affected parties have been adequately presented so that no prejudice has arisen, form will not be elevated over substance and the matter will be allowed to proceed on the merits as originally filed.").

---

[15] Robinson Brog agrees that the Turnover Order permitted parties in interest to object to the claims filed by it on grounds other than the priority of such claims.

Finally, the Debtors' assertion that their claim for equitable subordination is not relevant unless and until Robinson Brog has an allowed claim fails for the simple fact that they have utterly failed to make the required showing necessary to obtain this "extraordinary remedy." *Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008), *aff'd*, 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009).

## CONCLUSION

For all of the foregoing reasons, and the reasons in the Motion, the Complaint should be dismissed in its entirety with prejudice.

Dated: October 31, 2018
      New York, NY

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
By: */s/ Alex Spiro*_____
Alex Spiro
Lindsay Weber (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Email: alexspiro@quinnemanuel.com
lindsayweber@quinnemanuel.com

L'ABBATE, BALKAN, COLVITA &
CONTINI LLP
Marian C. Rice, Esq.
James D. Spithogiannis, Esq.
1001 Franklin Avenue
Garden City, New York 11530
Email: mrice@lbcclaw.com
JSpithogiannis@lbcclaw.com
*Co-Counsel to Robinson Brog Leinwand
Greene Genovese & Gluck P.C., A. Mitchell
Greene, and Adam Greene*